Govier, Appellant, vs. Brechler and another, Respondents.

*November 20—December 8, 1914.*

*Vendor and purchaser of land: Brokers: Knowledge of agent, when not imputed to principal: Evidence: Competency: Maps: Contract construed: "Plow land:" "Close to a railroad:" Reformation of contract.*

1. One who employed an agent to find a purchaser for his land was not chargeable with knowledge which the agent had previously acquired (but did not communicate to his employer) as to other lands which the employer finally agreed to accept in part payment, since such knowledge of the agent did not relate to the sub-

ject of his employment, was not acquired while he was acting as agent, and was not within the scope of his authority.

2. A contract for the sale of land having provided that the vendor was to accept other land in part payment, but that if such other land was not as represented he might reject it and demand cash in lieu thereof, knowledge of the vendor's agent that such other land was not as represented was immaterial and did not affect the vendor's right to reject it.

3. Maps and diagrams are frequently received in evidence with very slight proof of accuracy or authenticity when they constitute merely a picture or a summing up of evidence otherwise legitimately in a case; but when they are offered to establish an independent relevant fact—in this case the existence of a railroad right of way near certain land—they must be certified or verified or otherwise made competent under the same rules as apply to other documentary evidence.

4. Where, in a contract of sale, land is represented as being "plow land," that means that it is tillable land, not arid land which might be plowed without any beneficial results.

5. The words "close to a railroad" in a land contract must ordinarily be understood relatively to local conditions. *It seems* that land in North Dakota sixteen miles from a railroad is not within the meaning of the words.

6. A court of equity will not reform a written instrument for a mistake in reducing it to writing unless such mistake is established by the most clear and satisfactory evidence.

7. The evidence in this case is *held* insufficient to warrant the reformation of a contract for the sale of land so that it should provide that the land to be taken by the vendor in part payment was to be "close to a railroad *right of way*," instead of "close to a railroad."

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Meyer & Burgess,* attorneys, and *Richmond, Jackman & Swansen,* of counsel, and oral argument by *K. F. Burgess.*

*W. E. Howe,* for the respondents.

TIMLIN, J. A written contract in words and figures following existed between the parties:

"This agreement made this 8th day of Sept. 1911, between *James Govier,* party of the first part, and *Fred L. Brechler* and *Peter Boebel* parties of the second part all of Fennimore

Grant Co. Wis. Witnesseth—That first party hereby agrees to sell to the above named second parties his farm consisting of 260 acres more or less in the town of Mt. Ida, Grant Co., Wis. and described as follows—The NW ¼ of SW ¼ and W ½ of NW ¼ and the West ½ of SE ¼ of NW ¼ all in Section 14, also the NE ¼ of SE ¼ and the East ½ of NE ¼ in Section 15. All the above in Township six north of Range three west of the 4th P. M.—the consideration to be twenty-two thousand, one hundred ($22,100) dollars to be paid as follows—Forty-eight hundred ($4,800) in exchange of property consisting of first party's choice of 160 acres of the E ½ of Section 25, Township 132, Range 95 West of the 5th P. M. in Adams County, No. Dakota, with the understanding that 95 per cent. to be plow land and close to a railroad.    Papers to be made Mch. 1st, 1912, also Forty-eight hundred ($4,800) dollars in cash or less Mch. the first 1912, and balance, Five Thousand ($5,000) dollars to be agreed upon Mch. 1, 1912, at 5 per cent. Int. from 3–1–1912.    Second parties to fulfil on con- tract between W. R. Fry and *James Govier,* there now being a balance due on said contract $7,500 on principal, *Govier* to pay the interest on said contract to March 1st, 1912, and the taxes on the 260 acres.    First party agrees to pay for drilling the well now under way on the 260 acres—or if not completed to pay second parties the sum of Three hundred ($300) dol- lars.    Second parties to convey by warrantee deed free of all indebtedness, including 1911 taxes on the 160 acres chosen by first party as part payment, with abstract showing good title, also to pay round-trip fare to inspect and select this 160 acres in No. Dak.—and if not as represented first party will not be compelled to accept same as part purchase price of 260 acres.

"In presence of                          JAMES GOVIER.
   "J. R. Villemonte.                     FRED L. BRECHLER.
   "Will Mauer.                           PETER BOEBEL."

This contract was performed by the parties except as to the North Dakota land, which the plaintiff rejected under that clause of the contract which provides that if this land is not as represented he need not accept the same in part payment for his land.    The plaintiff then brought an action at law against defendants to recover this unpaid portion of the pur- chase money.    The defendants interposed an answer and a

counterclaim and in the latter pleading sought a reformation
of this contract so as to make it read: "close to. a railroad
right of way" instead of "close to a railroad;" and thereupon
to require the plaintiff to accept a deed of this North Dakota
land in payment of the balance due upon said contract.   The
circuit court gave defendants the relief demanded in this
counterclaim and the plaintiff appeals, contending that there
was no sufficient evidence to warrant the exercise of the equi-
table power of the court to reform a written instrument.
Appellant further contends that the court took an erroneous
view of the nature of the contract and also decided for ref-
ormation upon several erroneous rules of law, by the appli-
cation of which certain evidence relating to knowledge of a
broker or middleman of the plaintiff was given an improper
and unwarranted legal value, and further that said ruling
rested in part upon incompetent evidence relating to the ex-
istence and location of a railroad right of way.   Further,
that without this erroneous view of the contract and with
these two items of evidence out, the circuit court would not
have decided the case in this way, and further that in any
event the evidence in support of the counterclaim is not so
clear and satisfactory as to support a decree for reformation.
It must be borne in mind that there is no evidence of fraud.
The reformation was decreed on the ground of mutual mis-
take.   The circuit judge at the close of the evidence said:

. "Well, that closes the testimony.   I haven't any doubt
whatever that *Mr. Govier* authorized Mr. Lange to find a
purchaser at the price of $80 an acre; and Mr. Lange couldn't
find any one that would give $80 an acre cash for this land;
and thereupon the matter of a sale was talked over by the de-
fendants in this case with Mr. Lange, and ultimately with
Mr. Lange [*Govier*], resulting in this contract.   By the con-
tract the Dakota quarter-section was to be put in at $4,800.
Now that land at $80 an acre cash would bring $20,800.   At
$85 an acre, being the price at which it was taken by the de-
fendants in this case, it would bring $22,100.   The difference
is $1,300 between the price it was put in at and the price at

which the plaintiff was willing to sell the land for cash.   In other words, defendants gave to the plaintiff $1,300 more for the land on this trade than they would have had to do if they paid cash for it at $80 an acre.   So that to start out with, this is not one of those cases that appeals very strongly to the court in favor of the plaintiff in this case.   He got a very good 'price for his land, more than he was willing to sell it for apparently."

The plaintiff's action was at law.   The contract upon which he sued was on its face a very proper and lawful contract, well and intelligently devised to protect the man who was parting with his property, visible and known to both parties, and who was to receive in part payment a distant tract of land concerning which he has no accurate detailed information.   The contract is plain and easily understood.   It may well be that the plaintiff, while willing to accept $80 an acre in cash for his land, would not sell for less than $85 an acre if he were obliged to take North Dakota land in part payment, and not then unless the North Dakota land was as represented.   Foresight and intelligence in making perfectly plain and lawful contracts are not to be penalized, nor is such a contract to be received by the court in any unwelcome spirit.

The plaintiff in the spring of 1911 employed one Karl Lange to procure a purchaser for his land, and Lange brought defendants to see the land and introduced them to the plaintiff; in short, procured them.   At this time Lange had knowledge which he acquired in 1910 of the fact that there was no railroad close to this North Dakota land, but he did not communicate this information to the plaintiff.   The circuit court, we are convinced, by rulings and remarks made during the trial, considered that the plaintiff was chargeable with this knowledge of Lange.   This was erroneous.   Lange had no agency or authority from the plaintiff of any kind at the time he learned this fact.   He never had any authority or agency from the plaintiff to accept or pass upon the consideration to be received by plaintiff.   His agency was to find

a purchaser able, ready, and willing to purchase for cash at $80 per acre or otherwise on terms satisfactory to the plaintiff. The plaintiff having never delegated to Lange an agency covering the selection or rejection or acceptance of this North Dakota land, the knowledge which Lange had did not relate to the subject of his agency and was not acquired while he was acting as agent and was not within the scope of the ·agent's authority, hence this item of evidence was entirely incompetent and irrelevant. *Congar v. C. & N. W. R. Co.* 24 Wis. 157; *Shafer v. Phœnix Ins. Co.* 53 Wis. 361, 10 N. W. 381; *Pringle v. Dunn,* 37 Wis. 449, 468; *Melms v. Pabst B. Co.* 93 Wis. 153, 66 N. W. 518.

There is a second objection to the consideration of this fact of Lange's knowledge, and that is that the parties chose to make a contract giving to plaintiff the right to reject the land and demand cash payment if the land was not as represented in this contract. This had relation to the condition of the land at the time the contract was signed and not at some former time, and it had relation to the particular description of North Dakota land, and there is no rule of law which would prevent the plaintiff removing doubts or suspicions, if he had any, and requiring the defendants to stipulate with reference to the proximity of a railroad to this particular tract at that particular time.

Next, the learned circuit court admitted in evidence, for the purpose of showing there was a railroad right of way within a few miles of this North Dakota land, a certain map with a leadpencil line drawn across it to indicate such right of way. This map was one apparently gotten up by some real-estate agent for advertising purposes. It was not certified by any public officer or verified by any person or otherwise made competent as evidence. Another small map on a larger scale, to which there was annexed an unverified list of tracts of land which the document stated constituted a right

of way on which the Northern Pacific Railway Company had paid taxes, was also received in evidence for the same purpose. There was no certificate to verify the latter document. Assuming that the fact whether there was or was not a right of way near this land was relevant, the evidence mentioned was incompetent to establish that fact. Maps and diagrams are frequently received in evidence with very slight proof of accuracy or authenticity when they constitute merely a picture or a summing up of evidence otherwise legitimately in the case. But when they are used to establish an independent relevant fact they are subject to the same rules as other documentary evidence.

Next, the learned circuit court during the trial expressed an opinion that the words "plow land," found in the written contract, meant land capable of being plowed. This is manifestly incorrect. Plow land in such connection means tillable land, not arid land which might be plowed without any beneficial results. We think this view affected his construction of the testimony relative to the requirement that the North Dakota land should be ninety-five per cent. plow land.

The words "close to a railroad," found in the contract, might require interpretation under certain circumstances, but here it is tacitly assumed by all parties that reformation was necessary and that land sixteen miles from a railroad was not within the meaning of the contract "close to a railroad." This appears to be a reasonable view of the requirement. But the words ordinarily must be understood relatively to local conditions. Lands in Alaska sixteen miles from a railroad might be considered close to a railroad.

The circuit court found that the quarter-section of land in question contained ninety-five per cent. plow land. The evidence to support this finding is very meager. We can safely say, however, that on a proper view of this contract and excluding the incompetent evidence above mentioned there is

no sufficient evidence to warrant a reformation of the contract. As long ago as *Harter v. Christoph,* 32 Wis. 245, it was said:

"The rule is perfectly well settled, that a court of equity will not reform a written instrument for a mistake in reducing it to writing, unless such mistake is established by the most clear and satisfactory proof. Until such proof is made the written instrument must be taken to contain the real contract between the parties."

This rule has been re-asserted as late as *Garage E. M. Co. v. Danielson,* 156 Wis. 90, 144 N. W. 284. See, also, *Meiswinkel v. St. Paul F. & M. Ins. Co.* 75 Wis. 147, 43 N. W. 669; *Kent v. Lasley,* 24 Wis. 654. *Boebel,* one of the defendants, was not present when the contract was written out by the scrivener and he signed it without reading it. So that on the practically unsupported testimony of the defendant *Brechler* and contrary to the testimony of the scrivener, the plaintiff, and an employee of the plaintiff, and contrary to the writing, the reformation in question was decreed. We must hold that it was decreed on insufficient evidence.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment in favor of the plaintiff for the amount of money due upon the contract in suit, with costs.