SCHWELLENBACH, Respondent, vs. WAGNER and others, Appellants.*

*February 6—March 6, 1951.*

---

* Motion for rehearing denied, with $25 costs, on May 8, 1951.

For the appellants Peter Wagner, Raymond Suennen, administrator, and Employers Mutual Liability Insurance Company of Wisconsin, there was a brief by *Gwin & Petersen* of Hudson, and *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Oscar T. Toebaas*.

For the appellants J. E. O'Brien and Iowa Mutual Liability Insurance Company there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *John Doar*.

*E. Nelton* of Balsam Lake, for the respondent.

BROADFOOT, J.   Upon appeal the defendant O'Brien and his insurance carrier contend that the damages awarded to the plaintiff by the jury are excessive. The other defendants contend that there was no credible evidence to support the jury's finding that Wagner's truck was illegally parked nor that such parking was a proximate cause of the collision, and also that there is no credible evidence to support the jury's finding that the failure of the defendant Wagner to have a red flag at the end of the load of logs was a proximate cause of the collision.

The complaint alleged, among other things, that Wagner was negligent in that he parked said truck upon a hill or

curve in the highway which was outside of a business or residence district. If true, this would be a violation of sec. 85.19 (3) (f), Stats. The complaint also alleged that Wagner was negligent in failing to display a red flag at the rear of the load of logs and that said logs extended more than four feet beyond the rear of the body of the truck. If true, this was a violation of sec. 85.66.

The record is marked by an absence of information as to the character of the highway at the point of collision. Wagner testified that he stopped his truck on top of a small knoll, and at a point where there was a very little curve. The plaintiff testified that there was a slight curve in the road and that the road was slightly upgrade at the point where the truck was parked. O'Brien testified that there was a curve in the road. With the exception of defendants' Exhibit A there is little evidence as to the length of the highway involved in the curve, the degree of the curve, or the extent of the grade. While the defendant O'Brien was upon the witness stand his attorney presented a rough sketch drawn in pencil which was marked "Defendants' Exhibit A." O'Brien testified that the sketch was drawn under his direction to represent the highway where the accident occurred. After he marked certain letters thereon to indicate the location of the truck and his car, and after identifying other objects on the drawing, the exhibit was offered in evidence as a "farmer's diagram of the situation not drawn to scale but just for the purpose of illustration." Objection was made to the receipt of the exhibit in evidence on the ground that it would tend to confuse the jury if given to them. The trial court admitted the sketch in evidence and it·was immediately exhibited to the jury by O'Brien's attorney. It was not referred to by O'Brien in his testimony thereafter.

The defendants Wagner, the Suennen estate, and Employers Mutual Liability Insurance Company contend that the trial court erred in admitting defendants' Exhibit A in

evidence; that the exhibit was grossly misleading, and that it influenced the jury in arriving at its verdict. This court has had little occasion to pass upon the admissibility of informal drawings and sketches. In *Govier v. Brechler,* 159 Wis. 157, 162, 149 N. W. 740, the following statement appears:

"Next, the learned circuit court admitted in evidence, for the purpose of showing there was a railroad right of way within a few miles of this North Dakota land, a certain map with a lead-pencil line drawn across it to indicate such right of way. This map was one apparently gotten up by some real-estate agent for advertising purposes. It was not certified by any public officer or verified by any person or otherwise made competent as evidence. Another small map on a larger scale, to which there was annexed an unverified list of tracts of land which the document stated constituted a right of way on which the Northern Pacific Railway Company had paid taxes, was also received in evidence for the same purpose. There was no certificate to verify the latter document. Assuming that the fact whether there was or was not a right of way near this land was relevant, the evidence mentioned was incompetent to establish that fact. Maps and diagrams are frequently received in evidence with very slight proof of accuracy or authenticity when they constitute merely a picture or a summing up of evidence otherwise legitimately in the case. But when they are used to establish an independent relevant fact they are subject to the same rules as other documentary evidence."

Exhibit A indicates that at and near the point of the collision there was an "S" curve; that is, not one but two curves, each with a very sharp degree of curvature. Neither O'Brien nor any other witness testified that the diagram was a true or correct representation of the highway. There was no testimony that the exhibit was a fair representation or that it reasonably or substantially represented the highway. The exhibit was not used to illustrate O'Brien's testimony, and the trial court, at least, assumed that it was to be used

as independent evidence. He referred to the exhibit twice in his opinion, in which he indicated that there was a pronounced curve in the highway as shown by the exhibit, and again as showing that there was a curve in the road. No instructions were given to the jury that they should consider the exhibit as anything but independent evidence of a relevant fact. The admission of the exhibit, therefore, was prejudicial to the objecting defendants, and the court erred in admitting the same as an exhibit.

O'Brien did testify that because of the curve he could not see vehicles approaching from the west beyond the truck and the record as a whole sustains the jury's finding that Wagner was negligent in parking the truck at the time and place in question. Wagner also was negligent in failing to display a red flag at the end of the load of logs. The record is clear that one log in particular extended at least four feet nine inches beyond the rear of the platform of the truck. Whether either of such acts of negligence was a proximate cause of the collision would depend in some measure upon the extent of the curve and the grade in the highway. Questions as to causation should be answered by a jury from accurate information and not from an inaccurate exhibit without verification or authenticity.

It is contended that an award of $7,500 to the plaintiff for pain and suffering is excessive. The record shows that the plaintiff sustained a fracture of two ribs, a transverse fracture of the humerus of the right arm, lacerations and bruises over the site of the fracture of the arm, bruises to the chest, and shock. Because of a shrinkage of the muscle and restricted movements of the joints near where the fracture of the arm took place, physiotherapy treatments were administered until March 3, 1948. There is evidence that the fracture of the humerus did not heal properly and that at the time of the trial there was no union present, and that the condition could only be relieved by an operation and the

insertion of bone grafts in the arm. The plaintiff resumed his work with Polk county about March 10, 1948, but testified that he was unable to do all of his work and that some of his duties caused considerable pain in his arm. This was verified by medical testimony. There was medical testimony that at the time of the trial he had a disability of the right arm of approximately twenty-five per cent.

The damage question in the special verdict read as follows:

"At what sum do you assess the damages to the plaintiff, Frank Schwellenbach, naturally resulting from such injuries as you find were actually sustained by him as a result of the accident in question?
"A. Medical and hospital expense?
"(Answer by court.)
"B. For pain and suffering?
"Answer.
"C. For loss of earnings?
"Answer."

Ordinarily in the damage question, when there is proof of disability as in this case, physical injury is included with the subdivision on pain and suffering. However, with respect to that subdivision the court gave the following instruction:

"I am instructing you now in regard to 'B,' for pain and suffering. If from the evidence it is reasonably certain that some of his injuries will extend into the future and will therefore cause him pain and suffering in the future, you will allow him a reasonable compensation therefor. To justify the assessment of damages for any future disability it must appear from all the credible evidence to a reasonable certainty that continued disability or pain and suffering as a result of continued disability is likely to result from the injuries complained of as a natural result of the accident."

By this instruction the court directed the jury to include in its answer to subdivision "B" damages for future disability. The form of the question was favorable to the defendants, and from the entire record we cannot say that the award of damages was excessive.

No error so far as the plaintiff is concerned is claimed or proven. The causal negligence of the defendant O'Brien is not questioned. The judgment therefore is affirmed so far as the plaintiff is concerned, and the only question to be determined upon a new trial is with respect to contribution on the part of the defendants Wagner, the Suennen estate, and Employers Mutual Liability Insurance Company of Wisconsin. A new trial is ordered solely upon the question of whether the negligence of the defendant Wagner was a proximate cause of the collision.

*By the Court.*—Judgment affirmed in favor of the plaintiff and against the defendants J. E. O'Brien and Iowa Mutual Liability Insurance Company, and cause remanded for a new trial as to contribution between the defendants.