KRCMAR, Respondent, v. REICHERT and others, Appellants.

*November 30, 1964—January 5, 1965.*

264

For the appellants there were briefs by *Clark & Kenyon* of Tomah, and *Hart, Kraege, Jackman & Wightman* of Madison, and oral argument by *F. Robert Kolacke* of Madison.

For the respondent there was a brief by *Curran & Curran* of Mauston, and oral argument by *Thomas J. Curran.*

HEFFERNAN, J. Defendants contend that Krcmar's causal negligence was, as a matter of law, equal to or greater than the causal negligence of Reichert. In their argument, they appear to claim that Reichert was free from negligence as well as that Krcmar's negligence was greater. Defendants also claim that it was error to receive in evidence a certain sketch.

". . . When a jury verdict is attacked we inquire only whether there is any credible evidence that under any reasonable view, supports the verdict." [1]

"In the great majority of automobile accident cases the comparison of negligence is for the jury, and the instances in which a court can rule as a matter of law that the negligence

---

[1] *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400.

of a plaintiff equaled or exceeded that of a defendant are extremely rare." [2]

1. *Reichert's negligence.* The jury could properly have found Reichert negligent with respect to speed. The applicable limit was 65 miles per hour. He admitted driving 70 miles per hour on G farther north. He testified, however, that as he approached the intersection his speed was between 60 and 65 miles per hour. He based this on having checked his speed when he observed a deer-crossing sign a mile or a mile and a half north of the intersection. His credibility on this point was impeached by other testimony that there was no deer-crossing sign within 14 miles.

The jury could consider, at least as corroborative evidence of speed in excess of 65 miles per hour, the following facts:

Reichert's Ford automobile traveled about 100 feet on the pavement with brakes applied hard, and another 100 feet across the shoulder and down a ditch. It then went up the shoulder of the town road, striking the Krcmar car with sufficient force to throw Mr. Krcmar out of it and from 10 to 25 feet from his car. The Reichert car continued 106 feet over the ground and through some brush. It retained enough momentum so that when it was stopped by a tree, Reichert was momentarily stunned by a bump on the head and the left front door was jammed shut.

It appears that if Reichert had remained on the pavement, in addition to applying his brakes, the collision would not have occurred. Excessive speed shortened the time Krcmar had in which to cross the road in safety, and probably was a cause of Reichert's loss of control of his car.

Reichert's testimony was subject to the inference that he did not see Krcmar's car when it was at the stop sign, and the jury may have concluded that he ought to have become

[2] *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 471, 124 N. W. (2d) 609.

aware of Krcmar's intention to cross highway G sooner than he did.

2. *Comparison with Krcmar's negligence.* Krcmar failed to yield the right-of-way to Reichert as required by sec. 346.18 (3), Stats. His car was found to be in low gear after the collision, and Reichert did not claim that he failed to stop. The jury may have inferred that Krcmar saw Reichert, but erroneously thought there was time to cross in front of him. Reichert's excessive speed may have contributed to Krcmar's mistake. Presumably when the jury found Krcmar negligent, they considered his failure to yield the right-of-way and his failure to make a sufficient appraisal of the speed of Reichert's approach.

Defendants rely upon *Schlueter v. Grady* [3] where we held as a matter of law that negligence of the driver on the non-arterial highway (with respect to lookout and right-of-way) equaled or exceeded that of the driver on the arterial (with respect to speed and management and control). We pointed out, however, that the driver on the nonarterial so completely failed to keep a lookout that she did not see the other car until the moment of impact. We there distinguished the *Henschel Case* [4] where comparison of negligence was left to the jury and did so on the basis that Henschel had seen the car on the arterial and concluded that he had time to get across. In the case before us the jury was not compelled to find that Krcmar plunged into the intersection without keeping any lookout, and we conclude that under these circumstances the comparison of negligence remained in the province of the jury.

3. *The sketch.* After the accident Mrs. Krcmar, a Mr. and Mrs. Foubert, and a Mr. Rogers visited the scene. The two men took certain measurements with a tape. Rogers

---

[3] (1963), 20 Wis. (2d) 546, 123 N. W. (2d) 458.

[4] *Henschel v. Rural Mut. Casualty Ins. Co.* (1958), 3 Wis. (2d) 34, 87 N. W. (2d) 800.

apparently read the measurements from the tape and marked them upon a rough sketch of the area. All four signed the sketch. Rogers was in California at the time of the trial. The other three testified, describing the procedure just outlined, but none of them attempted to state what the measurements had been. The sketch obviously was not drawn to scale, outlined the intersection of the two roads, contained lines representing the tire marks, trees, and a number of other features referred to in the testimony. Many of the same features appeared upon another exhibit earlier received in evidence, a plat drawn to scale upon the basis of measurements made by a witness whose qualifications appear to have been accepted by the parties. Other witnesses testified to measurements they had made, and these corresponded very closely to the measurements marked on the sketch.

Thus there was no direct testimony disclosing the measurements made by Foubert and Rogers. The notations on the sketch were hearsay and the sketch could not properly be admitted as independent evidence of such measurements. It happens, however, that virtually all the physical features and the measurements shown on the sketch were independently established by competent evidence, and certain notations on the sketch which in form were conclusions were obvious and almost necessary inferences from the independently established facts. We observe no significant fact added by the sketch nor any representation thereon which could mislead.

It has been said:

"Maps and diagrams are frequently received in evidence with very slight proof of accuracy or authenticity when they constitute merely a picture or a summing up of evidence otherwise legitimately in the case. But when they are used to establish an independent relevant fact they are subject to the same rules as other documentary evidence." [5]

[5] *Govier v. Brechler* (1914), 159 Wis. 157, 163, 149 N. W. 740.

The sketch in question did not present the type of misleading information which caused the court to hold a diagram improper in *Schwellenbach v. Wagner*.[6]

This sketch could well have been rejected, but its use was not prejudicial.

*By the Court.*—Judgment affirmed.

---

[6] (1951), 258 Wis. 526, 531, 46 N. W. (2d) 852.