KENWOOD EQUIPMENT, INC., Plaintiff and Respondent, v. AETNA INSURANCE COMPANY and others, Defendants and Third-Party Plaintiffs and Appellants: CONTINENTAL NATIONAL AMERICAN GROUP, Third-Party Defendant and Respondent. [Case No. 179.]

SCHILZ, Appellant, v. LASHLEE and others, Respondents. [Case No. 180.] *

*Nos. 179, 180. Argued October 7, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 750.)

* Motion for rehearing in Case No. 180 denied, without costs, on January 5, 1971.

474

For the appellants in Case No. 179 there was a brief by *Heide, Sheldon, Hartley, Thom & Wilk* and *W. A. Sheldon,* all of Kenosha, and oral argument by *W. A. Sheldon.*

For the appellant in Case No. 180 there was a brief by *Habush, Gillick, Habush, Davis & Murphy* and *Robert L. Habush,* all of Milwaukee, and oral argument by *Robert L. Habush.*

For the respondents in Case No. 179 there was a brief by *Heft, Coates, Heft, Henzl & Bichler* and *Robert H. Bichler,* all of Racine, and oral argument by *Robert H. Bichler.*

For the respondents in Case No. 180 there was a brief by *Heide, Sheldon, Hartley, Thom & Wilk* and *W. A. Sheldon,* all of Kenosha, and oral argument by *W. A. Sheldon.*

CONNOR T. HANSEN, J. This appeal concerns the trial court's decision to sustain the verdict with respect to the negligence of the parties as to causation and comparison;

error alleged to have occurred during the trial; and its order on the reduction of damages.

## *Negligence.*

On appeal, the defendants take the position that the trial court erred in submitting the case to the jury as an intersection accident rather than as a deviation from proper lane of travel accident. We agree with the determination of the trial court in this regard.

Both vehicles were proceeding south on Highway 32 in Kenosha county. Plaintiff intended to make a left turn and go east on County Trunk T. Defendant was in the northbound lane of Highway 32, in the process of passing the plaintiff, when the accident occurred. The plaintiff was driving a flatbed truck pulling a trailer about ten feet long with an air compressor on it. The defendant was driving a ready-mix cement truck, carrying a load weighing approximately 52,000 pounds. The impact was between the right front fender of defendant's truck and the left rear cab of plaintiff's truck. After the accident, the plaintiff could not extricate himself from the cab of the truck and the city fire department removed him with the use of tools.

The facts are in dispute as to when the plaintiff left his lane of travel to commence his left turn; [1] the point

---

[1] Sec. 346.13 (1), Stats., provides:

"(1) The operator of a vehicle shall drive as nearly as practicable entirely within a single lane and shall not deviate from the traffic lane in which he is driving without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

Sec. 346.31 (3), Stats., provides in part:

"(3) LEFT TURNS. Except as otherwise provided in sub. (4), left turns at intersections shall be made as follows:

"(a) The approach for a left turn shall be made in that lane farthest to the left which is lawfully available to traffic moving in the direction of travel of the vehicle about to turn left. . . .

of impact in relation to the intersection; [2] and whether the turn signal on plaintiff's truck was visible from the rear. The plaintiff testified he activated his left-turn signal 150 feet from the intersection; that it was working and visible from the rear; and that he had reduced his speed to 15 miles per hour.

The defendant testified he did not sound the horn on his vehicle before passing; [3] that he did not see the left-turn signal on the plaintiff's truck and that he had accelerated to 37½ miles per hour to pass the plaintiff. The speed limit was 35 miles per hour.

It is also submitted, on behalf of the defendant, that the physical facts demonstrate that the accident could not

---

"(b) The intersection shall be entered in the lane of approach and, whenever practicable, the left turn shall be made in that portion of the intersection immediately to the left of the center of the intersection. . . .

"(c) A left turn shall be completed so as to enter the intersecting highway in that lane farthest to the left which is lawfully available to traffic moving in the direction of the vehicle completing the left turn. . . ."

[2] The intersection of Highway 32 and County Trunk T is a marked intersection in a rural area.

Sec. 346.10, Stats., "When passing at railroad crossing or intersection prohibited. . . .

"(2) Subject to the exception stated in sub. (3), the operator of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any intersection unless the roadway is marked or posted for 2 or more lines of vehicles moving simultaneously in the direction in which such vehicle is proceeding or unless permitted or directed by a traffic officer to pass at such intersection.

"(3) Outside of a business or residence district, the restrictions which sub. (2) places upon passing at an intersection apply only if such intersection has been designated by an official traffic sign or signal, regardless of whether such sign or signal was intended to guide, direct, warn or regulate traffic."

[3] Sec. 346.07, Stats., "Overtaking and passing on the left. . . .

"(1) The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass on the left a vehicle proceeding in the same direction."

have happened when Schilz was in the intersection and that Schilz's testimony in that respect is incredible. We do not agree. To support defendants' position, facts that are in dispute as to when and how plaintiff was operating his truck, must be assumed to be true.

We do not consider it necessary to here relate the conflicting testimony as to how the accident occurred. However, from our examination of the record, the briefs of the parties, and their oral arguments, we conclude there was sufficient credible evidence to support the verdict of the jury on their determination of the issue of negligence, causation and comparison.

A jury's finding of negligence and the apportionment thereof will not be set aside when there is any credible evidence which under any reasonable view supports the verdict. *Schuster v. St. Vincent Hospital* (1969), 45 Wis. 2d 135, 172 N. W. 2d 421. This is especially so where the verdict has been approved by the trial court. *Berg v. De Greef* (1967), 37 Wis. 2d 226, 155 N. W. 2d 7.

The jury did find the plaintiff negligent. However, the fact that the jury found him negligent, even though the finding may have been based upon the violation of a safety statute, does not categorically affect the jury's apportionment of negligence. A breach of a safety statute does not establish as a matter of law the degree of contribution of the negligence to an accident. *Grana v. Summerford* (1961), 12 Wis. 2d 517, 521, 107 N. W. 2d 463. On the evidence in this case, it cannot be said as a matter of law that the negligence of the plaintiff was at least equal to or greater than that of the defendant.

### *Error.*

The trial court refused to give a requested jury instruction covering deviations. As we have previously stated, the facts are in dispute. This includes a dispute as to the point and manner in which plaintiff commenced his left turn; however, the record is clear that the col-

lision occurred while he was attempting to make a left turn. We find no evidence of deviation unassociated with the left turn. Therefore, the trial judge did not err in refusing to give the requested instruction on deviation.

". . . A trial court is not required to give a requested instruction unless the evidence reasonably requires it, and this is true even though the requested instruction asserts a correct rule of law." *Belohlavek v. State* (1967), 34 Wis. 2d 176, 179, 148 N. W. 2d 665.

Error is alleged in that the trial court permitted a police officer to transpose on a blackboard a nonscale drawing (from the sheriff's report) and that the error was compounded by permitting the same to be photographed and received in evidence. The photograph, along with the other exhibits, was given to the jury for use in its deliberations. The nonscale drawing was used to show where skid marks started and terminated in relation to the intersection. The officer testified that the diagram in the sheriff's report was a rough sketch made after the investigation on the basis of what he remembered. The length of the skid marks had been established by the previous testimony of the officer who was present at the scene of the accident and participated in the measurement of the skid marks. We are not persuaded that the trial court committed error when he admitted the nonscale blackboard drawing and the photograph of it into evidence with the specific ruling that the diagram was not being used to prove distances but to show where the skid marks began and ended in relation to the intersection.

The use of nonscale drawings has been held to be prejudicial error only where it had the effect of misleading the jury. *Schwellenbach v. Wagner* (1951), 258 Wis. 526, 46 N. W. 2d 852; *Allen v. Zabel* (1952), 261 Wis. 172, 176, 52 N. W. 2d 393; *Krcmar v. Reichert* (1965), 26 Wis. 2d 263, 267, 131 N. W. 2d 916. In this case the jury was aware that the blackboard drawing

was not drawn to scale. No claim is now made that the nonscale drawing was misleading. The length of the skid marks had been established by testimony, and the witness by using the sketch was showing the location of the skid marks to the intersection.

Defendants also contend that the trial court erred in overruling objections to the testimony of the officer regarding statements made by the plaintiff and the defendant at the scene of the accident. The case now under consideration is distinguishable from *Wilder v. Classified Risk Ins. Co.* (1970), 47 Wis. 2d 286, 177 N. W. 2d 109, which case concerned the inadmissibility of police officers' reports and testimony based on hearsay evidence from third parties. In the case now under consideration, the officer's report relating to a statement by the defendant was received without objection. The statement of the plaintiff was not received in evidence and the objection rested upon the officer using the statement to refresh his recollection. It is our opinion that the trial court properly overruled the objection and permitted the officer to use the report to refresh his recollection as to the statement made by the plaintiff.

Several other errors are assigned to the trial of this case.

The trial court admitted into evidence certain photographs which were objected to on the ground that they were inflammatory, irrelevant and incompetent. We cannot pass on this issue because the photographs are not a part of the record. We do observe, however, that the trial court has discretion in determining whether photographs may be properly used in placing the facts before the jury. *Merriman v. Cash-Way, Inc.* (1967), 35 Wis. 2d 112, 118, 150 N. W. 2d 472. The admission of photographs in evidence is not reversible error unless the trial court abused its discretion.

Also, it is alleged that counsel for plaintiff used leading and suggestive questions in the direct examination of

the plaintiff. The case was vigorously tried by able and experienced counsel. There were many objections—some sustained—some overruled. We find no leading and suggestive questions of sufficient import to constitute reversible error.

Further, defendants' counsel asserts that the trial court should not have ordered a certain remark of defendants' counsel stricken from the record and that the instruction of the court constituted an unjustified reprimand. The following is the remark and instruction objected to:

"[*Defendants' attorney*]: I think I am entitled to an honest answer from this witness.
"[*Plaintiff's attorney*]: I object that he is getting anything less than an honest answer. Just because—"

The court instructed the jury as follows:

"*The Court:* All right. Insofar as [Defendants' attorney's] remark, that he felt he was entitled to an honest answer from this witness, the jury is instructed that the remarks of counsel are not evidence in the case. That remark is ordered stricken, and the jury is instructed to disregard it."

We do not consider the instruction to be a reprimand but rather an instruction to inform the jury that remarks of counsel are not evidence.

Issue is also raised as to the exclusion of certain proof as to the length of the truck and trailer, directional signal lamps and instructions given on these issues. The truck was 20 feet long; the trailer attached to it with the air compressor on it was 10 feet long. It is conceded there were no directional lights on the trailer. The truck the plaintiff was driving was a 1957 model. The accident occurred in 1966. The applicable statutes are sec. 347.15 (1), (2) and (3m), Stats. 1965.[4]

---

[4] "(1) . . . No person shall operate on a highway any motor vehicle sold new after January 1, 1955, . . . unless such motor vehicle is equipped with direction signal lamps meeting the re-

Testimony as to measurements of the truck and trailer length and visibility of signal lights was offered from two witnesses, both based on observations of the truck after the accident. The trial court did not err in excluding this testimony. The testimony was properly excluded as to one witness because of the damage to the vehicle caused by the accident, and as to the other witness because he did not have personal knowledge of whether the rear signal lights on plaintiff's truck were visible from the defendant's truck. The instructions given by the trial court adequately informed the jury of the proper items for them to consider. Sec. 347.15 (3m), Stats. 1965, does not state that the directional lights must be on the trailer. The reference is to vehicles being equipped with directional signals "meeting the requirements of this section." The requirements in that section, as it existed in 1965, were set forth in sub. (2) and provided that there be two directional signal lights of the required color showing to the rear and visible to a distance of 100 feet. In its instructions, the trial court told the jury that the issue as it related to signal lights was whether or not they were visible to the defendant at the distance required by statute.

quirements of this section. Any other vehicle may be equipped with such lamps.

"(2) There shall be 2 direction signal lamps showing to the front and 2 showing to the rear so as to indicate intention to turn right or left. . . . Direction signal lamps when in use shall be plainly visible and understandable from a distance of 100 feet both during normal sunlight and during hours of darkness. . . .

"(3m) Any motor vehicle or combination of vehicles in use on a highway shall be equipped with direction signals meeting the requirements of this section when the distance from the center of the top of the steering post to the left outside limit of the body, cab or load of such motor vehicle or combination of vehicles exceeds 24 inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load thereof exceeds 14 feet."

We affirm the judgment of the trial court as to negligence, causation and contribution.

### Damages.

The plaintiff had been employed by Kenwood for approximately one week prior to the accident. He was thirty-two years of age. He sustained severe lacerations to his left arm and an injury to the third lumbar vertebra. All of the doctors who treated the plaintiff for his injuries testified that the injuries to the lower back were permanent. Further details of the injuries and employment record of the plaintiff are considered hereinafter.

On the issue of damages sustained by the plaintiff, the trial court submitted a verdict to the jury which contained five questions. The questions and the determinations of the jury are as follows:

| | |
|---|---|
| Past pain and suffering | $12,500.00 |
| Future pain and suffering | 30,000.00 |
| Medical and hospital expenses (determined by the court) | 1,495.05 |
| Loss of past wages | 11,600.00 |
| Loss of future earnings | 45,000.00 |

The damages assessed by the jury totaled $100,595.05.

The trial court in the decision on its motions after verdict stated the following with regard to the order of remittitur:

"The total amount of the damages awarded by the jury are excessive and shock the conscience of the court in the following respects: For past pain and suffering, $12,500; for future pain and suffering, $30,000; for loss of future earnings, $45,000. They are not based on the evidence in the case and appear to be based on pure guess and speculation; but are not due to perversity or prejudice or error during the course of the trial."

A new trial on the issue of damages was ordered unless the plaintiff consented to a reduction in the sum award-

ed for damages to a total of $27,500. The medical and hospital expenses and loss of past wages apparently approved by the court total $13,095.05. Although the trial court did not so specify, it would appear that the remaining $14,404.95 was to compensate the plaintiff for damages sustained by the plaintiff for past and future pain and suffering and future loss of earnings; proper items of damages for which the jury awarded the plaintiff a total amount of $87,500.

We are of the opinion that the trial court did not abuse its discretion in determining that damage award was excessive. The problem is presented by the form of the remittitur issued by the trial court when it ordered a new trial on the issue of damages.

The plaintiff petitioned the trial court to specify what portion of the reduced figure pertained to pain and suffering, past and future, and future loss of earnings. As we understand the trial court's decision denying the petition, it concluded that it erred in submitting a form of verdict requesting the jury to make the allocation of damages. The form of verdict used in this case was entirely proper, although cases have been before this court in which the damage questions have been presented the jury in a different manner. *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 49, 168 N. W. 2d 112.

As a result of the trial judge's failure to specify what part of the reduced figure pertained to the various items of damages, several issues are raised on this appeal. Once having exercised its discretion in determining the questions to be submitted to the jury in a verdict, it becomes incumbent upon the trial judge to review the specific items when ordering a remittitur. This was not done in this case and we consider it error not to do so when a specific request is made to the court for such a review. Upon appeal, we are unable to determine what portion of the total is attributable to the various damage

items. *Moldenhauer v. Faschingbauer* (1966), 30 Wis. 2d 622, 141 N. W. 2d 875. Although in *Moldenhauer* this court did modify the remittitur, there was no petition to the trial court for an allocation to the various items of damages.

The plaintiff also takes the position that if there is to be a new trial on issues of damages it should be limited to damages for past and future pain and suffering and future loss of earnings. To arrive at this position, the plaintiff assumes that the trial court allowed the damage items for medical expenses and loss of past wages in the amount of $13,095.05. Our attention has not been directed to any portion of the record where the trial court considered the item of loss of past wages determined by the jury to be $11,600, nor have we found any such reference. It is, of course, true that in the decision on motions after verdict, the trial court referred to the damage items of past and future pain and suffering and future loss of earnings. Nevertheless, the trial court ordered a new trial on all damages, unless the plaintiff opted for the reduction under the *Powers* rule.[5]

The scope of a new trial is discretionary with a trial court, and the question on appeal is whether the trial court abused its discretion.

"A party may not demand as a right that a new trial be restricted to one or more issues, and generally the limiting of a new trial to part of the issues lies within the sound discretion of the trial court, in determining when the ends of justice will be better served by such limitation; whether, in the particular circumstances, the court has abused its discretion invariably presents an important question.

".  .  .

"The court will generally grant a partial new trial when the error, or reason for the new trial, is confined to one issue which is entirely separable from the others and it is perfectly clear that there is no danger of com-

---

[5] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

plication, or where the error in a trial relates only to a certain issue which is in no way dependent for its proper trial on other issues and as to such other issues there was no error. In order that a partial new trial may be ordered, it must clearly appear that the effect of the error did not extend to all the issues tried; where it appears that the error may have affected all the issues, the conclusion of law follows that there must be a complete new trial, and, where an error, while ostensibly relating to one issue only, is of such a character as to have a prejudicial effect on the others, a full retrial should be had.

"Although an error affects one issue only, a new trial on all issues should be granted where this will best subserve the ends of justice." 66 C. J. S., *New Trial,* pp. 89, 90, 91, sec. 11.

". . . We have said that the matter of limiting issues upon a new trial is primarily for the discretion of the trial court. *Korpela v. Redlin* (1958), 3 Wis. (2d) 591, 597, 89 N. W. (2d) 305. . . ." *Baier v. Farmers Mut. Automobile Ins. Co.* (1959), 8 Wis. 2d 506, 511, 512, 99 N. W. 2d 709.

Under the facts of this case it cannot be said that the trial court abused its discretion when it determined the damages were excessive and ordered a new trial on all the damage issues.

The plaintiff also claims the trial court's analysis was inadequate and asks that we review the evidence of damages *ab initio.*

If the trial court's analysis is adequate, the abuse of discretion test is applied, that is, the jury's verdict will not be reinstated unless the trial court abused its discretion in setting it aside. *Burke v. Poeschl Brothers, Inc.* (1968), 38 Wis. 2d 225, 156 N. W. 2d 378.

This court does not contemplate that in every case the evidence must be set forth in detail. *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 561, 159 N. W. 2d 587. In this case we consider the trial court's analysis of the evidence to be adequate to support its determination that the damages were excessive.

Upon reviewing the record, we find that Dr. Olsman, a general surgeon, who treated the plaintiff at the scene of the accident and thereafter, described a severe laceration in the plaintiff's left arm which necessitated surgical repair of torn muscles and tissues. He also testified to a minimal compression fracture of the third lumbar vertebra and injury to the adjoining soft tissue. He stated that such injuries would produce later problems because of damage to the bones and joints resulting in post-traumatic arthritis and because of scarring of the soft tissue in and about the area of the injury.

Dr. Sattler, an examining and treating orthopedist, confirmed the diagnosis of compression fracture of the vertebra and noted enlargement of the affected vertebra on X ray. He stated the plaintiff's back problems would be permanent.

Dr. Joseph Regan, an examining orthopedist, also found enlargement of the vertebra on X ray. He testified that this was caused by a progressive laying down of calcification as a result of injury to the soft tissue around the site of the compressed vertebra. He stated that the injury to the plaintiff's spine is permanent and would continue to cause calcification of the soft tissue and ligaments in the area of the spine. He noted that the increased size of the spine and increasing calcification would continue to cause the plaintiff difficulty, manifested by pain and limitation of activity if the pain becomes severe enough. He testified that the calcification would continue to increase and that this would have the effect of decreasing the use of the plaintiff's back.

The plaintiff testified to sharp, throbbing pains in the back while hospitalized, lasting an hour or two, and occurring daily. He continued to experience pain after his release from the hospital. This was an everyday occurrence during the latter part of 1966. This continued into 1967, when the pain was sometimes dull and other times sharp and stabbing. The pain was not associated with any certain activity but he had some pain whenever

he bent over. It seemed to be getting better and he returned to work in the fall of 1967, but he continued to have pain which was associated with lifting. He thereafter took an advertising job, but even sitting at a desk caused him pain. He testified that the pains occurred four or five days a week on an average and lasted an hour or more. The pains were characterized as sharp and stabbing and required the plaintiff to stop whatever he was doing. He stated that the pain adversely affected his attitude towards his work and his attitude at home. He also testified that in 1969, his left arm again began to bother him and he couldn't use it.

Dr. Olsman, the treating physician, testified to the serious problems and the pain the plaintiff had while in the hospital and thereafter. He testified that the condition was permanent and would continue to cause discomfort particularly after stress, and after change in the weather. He stated that as the plaintiff got older and his bone structure became less calcified, these symptoms could become more severe. Dr. Regan testified that the progressive calcification would be manifested by pain.

After high school, plaintiff spent two years in the army. He worked at American Motors Corporation as a laborer from 1958 to 1963. He then worked in his father's tavern for a year and a half. Then the plaintiff worked for a year and a half at Anaconda American Brass Company where his wages totaled $5,950.50 in 1965, earning $2.72 per hour. Plaintiff left Anaconda American Brass Company in 1966 to work for Kenwood Equipment Company. On September 5, 1966, plaintiff started working at Kenwood Equipment, earning $3.75 per hour. He was employed as a general laborer.

When the plaintiff went back to work, after the accident, on September 11, 1967, he was given lighter work. Plaintiff was laid off in January of 1968, along with other employees and was not called back. He worked at the Lake Area Advertiser from March to June, 1968, in a desk job. Because of the difficulty with his back he began working with his father again in the tavern busi-

ness, where he tended bar from June, 1968, until April, 1969. Thereafter until the time of trial, he worked as a helper in the light construction company, for his brother-in-law. At all of these jobs subsequent to that with Kenwood Equipment, the plaintiff earned approximately $2 per hour.

Mr. Alter, plaintiff's former employer at Kenwood Equipment, testified that the plaintiff was not called back to work because of his complaints about his back in 1967 and 1968. He testified that he was concerned that the plaintiff would reinjure himself or others and that the company's compensation carrier would either cancel its insurance or increase its rate if it learned that the company put people back on the payroll with bad backs. He stated that if the plaintiff had not injured his back he would be working for them today.

Dr. Olsman, who testified that he had experience with industrial medicine and occupational health, stated that he would not certify the plaintiff as fit for moderate to heavy type of labor. He testified that the plaintiff's back condition was a serious disability as it affected the plaintiff's ability to perform heavy labor, and that he would probably have difficulty in performing heavy labor for the rest of his life. He stated that, in his opinion, the plaintiff would not be employable for moderate to heavy-type labor in Kenosha or comparable areas.

Dr. Sattler testified that the condition of the plaintiff's back was permanent, and that he would have difficulty performing his work as time progressed. Dr. Regan testified that the condition of his back would prevent the plaintiff from being gainfully employed in moderate to heavy-type laboring work. He also stated that if the plaintiff were required to do even moderate work over a regular period, such as three, four or eight hours, he would suffer recurrent pain and disability in his back. He further testified that the progressive calcification would decrease the use of his back in the future.

Plaintiff was thirty-two years old at the time of his injury and had a life expectancy of thirty-four years.

After considering all the evidence, we come to the conclusion that the trial court abused its discretion in reducing the total amount of the damages of the plaintiff to $27,500, as ordered in the remittitur. Because of this determination, together with the fact that the trial court did not specify what portion of the reduced figure pertained to the various items of damages, it is necessary that there be a new trial on the issue of damages only.

That part of the order granting a new trial on the issue of damages is affirmed; that portion of the order granting the plaintiff the election to enter judgment at the lesser amount is reversed.

On this appeal, costs are awarded to plaintiff, Kenwood Equipment, Inc., and Continental National American Group, third-party defendant and respondent. No costs are to be taxed in the case of Harvey Schilz v. Joseph B. Lashlee, et al.

*By the Court.*—Judgment in favor of Kenwood Equipment, Inc., affirmed; order granting new trial on issue of total damages only affirmed; and order for remittitur of damages reversed.

The following memorandum was filed January 5, 1971.

PER CURIAM (*on motion for rehearing*). The appellant Harvey Schilz asks this court to apply the *Powers* rule and to set the amount of the remittitur rather than sending the case back for a new trial on the question of damages. Normally, when error or an abuse of discretion is committed in applying the *Powers* rule by the trial court, this court does set the amount of the remittitur or additur as the case may be. However, in this case the court was unable on the appeal record to agree on an amount for each of the several items of damages and the only alternative was to send the matter back for a new trial. This result on appeal should be considered an unusual one. The motion for rehearing is denied, without costs.