REINKE and wife, Respondents, v. WOLTJEN, Appellant.

*October 31—November 29, 1966.*

654

For the appellant there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* attorneys, and *David J. Condon* of counsel, all of Green Bay, and oral argument by *Mr. Condon.*

For the respondents there was a brief by *Bonk, Lutz & Hertel* of Chilton, and oral argument by *Robert W. Lutz.*

BEILFUSS, J.   The issues on this appeal are as follows:

1. Does the evidence support an award to Leo Reinke of $45,000 for impairment of his earning capacity?

2. Does the evidence support an award to Leo Reinke of $1,000 for future medical and hospital expenses?

3. Does the evidence support an award to Mary Reinke of $2,000 for nursing services rendered by her to her husband, and is this an element of the wife or husband's damages?

This court said in *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 307, 120 N. W. (2d) 156, that:

". . . 'The familiar rule, often declared by this court, that where there is credible evidence to support a finding of a jury we may not disturb it, needs no citation of authorities.' *Mossak v. Pfost* (1950), 258 Wis. 73, 75, 44 N. W. (2d) 922."

In *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 135, 119 N. W. (2d) 321, the following language is found:

"A verdict approved by a trial court must be sustained if there is credible evidence which under any reasonable view admits of an inference that supports the jury's findings."

In its memorandum decision, the trial court stated:

"The Court is well satisfied that this $45,000.00 figure found by the jury for such damages is well justified by the evidence. As a matter of fact, it is the Court's opinion from observation of the plaintiff Leo Reinke in court at the trial, and from the testimony of witnesses in court, including the doctors, that far from being excessive this

amount is not, in the Court's opinion, high whatsoever, and that if the jury in its discretion would have found a larger sum for such damages it could have been sustained by this Court."

The major concern in this appeal is the jury award to Leo Reinke of $45,000 for impairment of earning capacity. (The verbiage of the verdict question is "For future loss of earnings, if any," but there is no issue on the form of the verdict question.)

At the time of the accident Leo Reinke was forty-one years old and had no known physical infirmities. He had only one year of high-school education.

From 1946 to 1959, Reinke was a farm-machinery mechanic with the Keller Implement Company at Forest Junction. In 1959 he became a farm-machinery salesman with the same company. In his job as a salesman it was necessary for him to deliver, operate, adjust, and demonstrate various kinds of field equipment. These activities required considerable physical agility to enable him to crawl over or under machines of various types and sizes to make adjustments, operate various controls and settings, and to walk or run behind operating machinery over plowed or other irregular field surfaces. In addition to his work as a salesman he did continue to do some mechanic repair work. He worked about sixty hours per week.

Reinke's earnings for 1959 were $5,600, in 1960 $6,400, and in 1961 $7,000. The defendant Woltjen concedes at the time of Reinke's injury his earnings were $7,000 per annum.

Reinke's major injuries consisted of an acute dislocation of the left hip with comminuted fracture of the acetabulum (the socket portion of the hip joint), a comminuted fracture of the ulna in his left arm, a laceration of the left leg, and severe paralytic ilius (an acute intestinal obstruction or malfunction).

Because of the fracture of the acetabulum, the head of the femur would not remain in place by means of a closed

reduction. An open reduction was performed and the fractured acetabulum repaired by means of surgical nails and screws. Reinke developed asceptic necrosis (death and deterioration of the original bone) at the head of the femur, necessitating bone grafts and resulting in a shortening of the left leg.

In all, Reinke has had six surgical procedures on his hip. He has been in the hospital a total of one hundred eighteen days and has been in casts of various kinds for three hundred eight days. To the time of trial he had not been able to walk without the aid of crutches or a cane. The medical objective is to fuse or immobilize the left hip. This has not as yet been accomplished and will require at least one more surgical procedure.

Reinke's permanent injuries are: A stiff left hip, a left leg one and one-half inches shorter than the right which requires that he wear a built-up three-and-one-half pound shoe, a permanent disability in his back and left knee, an ununited, but functional, fracture of the ulna. He will have pain in the future, his hip is 65 to 70 percent permanently disabled, his back is five percent permanently disabled, he has a permanent unnatural gait and cannot sit for long periods of time and needs a special chair, he will be able to climb stairs but with difficulty.

His permanent injuries are such that he will not be able to resume his former employment or any other employment requiring physical agility.

He will not be able to engage in *any* gainful employment for a period of one year from the date of trial, and thereafter will probably be physically able to do some type of office work. He expressed a desire to do whatever type work he could. At the time of trial his life expectancy was 27.45 years.

In addition to the award of $45,000 for impairment of earning capacity, Reinke was awarded his past medical expenses, $18,300 for loss of earnings, and $25,000 for his personal injuries—which was compensation for his pain, suffering, and inability to engage in his usual recreational and household activities, both past and future.

The defendant, Woltjen, concedes that the proof establishes that Reinke will not be able to work for a period of one year from the date of trial, and that an award for impairment of earning capacity in the amount of $7,000 is justified under the proof and consents to entry of judgment in that amount. Woltjen contends that there is no evidence in the record which supports any additional award for impairment of earning capacity.

It is Woltjen's position that Reinke will be able to engage in some kind of gainful employment and that because the record does not reveal what employment or what his earnings will be that the jury cannot speculate on the amount of his diminished earnings, if any.

In support of his position Woltjen cites several cases, primarily *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163; *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 595, 95 N. W. (2d) 249; and *Feinsinger v. Bard* (7th Cir. 1952), 195 Fed. (2d) 45. All three of these cases must be distinguished on their facts.

In *Puhl* the plaintiff worked intermittently before the accident; the record does not reveal how much or how long. Two years after the accident she worked for a short time for $45 per week. She quit this employment because of an ailment which was successfully treated and did not attempt to work thereafter. The court held there was an insufficiency of proof to sustain an award for impairment of earning capacity.

In *Behringer* this court held an instruction on impairment of earning capacity was improper because there was no evidence that plaintiff was not doing or able to do the same work she was doing before the accident. She quit working to take care of her children.

In *Feinsinger* the court allowed no recovery because the plaintiff, though he had substantial permanent injuries, could not show that he could not continue in his profession as a law professor without a loss of earnings.

In *Dietz v. Goodman* (1950), 256 Wis. 370, 374, 41 N. W. (2d) 208, the rule for determining damages for impairment of earning capacity appears as follows:

"The amount of damages to which the plaintiff was entitled was the difference, due to the injury, between his earning capacity before the injury and his earning capacity after the injury. Restatement, 4 Torts, p. 631, sec. 924, Comment on clause (b)."

Professor James D. Ghiardi, Personal Injury Damages in Wisconsin, Future Earnings and Earning Capacity, p. 126, sec. 8.03, writes as follows:

*"Permanent injury:* Evidence which establishes that a plaintiff has suffered a permanent injury is sufficient to allow a jury to draw an inference that there has been a compensable impairment of earning capacity. . . ."

Professor Ghiardi later states, at pages 133, 134:

"Sec. 8.04. *Measure of Recovery.* There is no fixed rule for estimating the amount to be recovered for loss or diminution of future earning capacity. The jury is to take into consideration what the plaintiff's income would probably have been, how long it would have lasted, and all other contingencies that earning capacity is subject to in order to return a fair and reasonable award. The process of ascertaining the amount of compensation to be awarded requires (1) the determination of the extent to which such capacity has been diminished, and (2) the fixing of the amount of money which will compensate for the determined extent of impairment. The extent of the diminution or impairment of earning capacity is generally to be arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what he was capable of earning after it occurred. In this regard, the nature and extent of the plaintiff's business, profession or employment, his skill and ability in his occupation or profession, the loss or diminution of capacity to follow it as a consequence of the injury, and the damages he has suffered by reason of such loss or diminution may be shown and taken into consideration. 15 Am. Jur., Damages, Secs. 91, 92. . . ."

In Restatement, 4 Torts, p. 635, sec. 924, it is said when the trier of the fact is determining damages that:

"In this are considered the type of work which the plaintiff has done, the type of work which, in view of his physical condition, education, experience and age, he would have been doing and will be likely to do in the future during the working period of his life, together with all other matters reasonably relevant."

In determining damages to be awarded for impairment of earning capacity or loss of future earnings, in most instances, the finder of the fact must deal in some probabilities. In the case where the claimant is totally permanently disabled from engaging in any gainful employment or activities his impairment of earning capacity can be calculated with a substantial degree of certainty. Most claimants do not face that drastic future but still may have suffered a loss of earning capacity. Many elements that go to a determination of impairment capacity cannot be proven with certainty. Proof of these elements must be permitted by facts or inferences that lead to reasonable probabilities. Some (but not all) of the elements which cannot always be shown with certainty are the length of time a disability will exist, the degree of improvement or additional disability that will ensue, the aptitude and ability of a disabled person to engage in other types of work, and the compensation he will be able to obtain. As to these and other uncertain elements the trier of fact must be allowed to consider the reasonably apparent probabilities as they appear from the evidence, together with such known facts as his age, his education and training, the type work he was doing before the injury, and the compensation he was receiving, and then in its judgment determine what amount fairly and reasonably represents his loss of earning capacity, reduced to its present value.

Woltjen concedes Reinke has shown a loss of $7,000 because of his inability to do any work for a period of one year from the date of trial. The award then is $38,000

not for his life expectancy of 27.45 years but one year less. It appears without contradiction that he can never do the same work he was doing or any other work requiring physical agility. He can probably do some type of office work. What type of office work is very problematical. He has only one year of high school. The jury could rightfully infer that with his lack of education and training his prospects for obtaining an office job paying $7,000 per year are remote. Certainly Reinke has suffered an impairment of his earning capacity. In view of his apparent probable prospect for employment and of his life expectancy, we agree with the trial court and are of the opinion that plaintiff Reinke has met his burden of proof to show an impairment of earning capacity and that an award of $45,000 is reasonable.

The jury awarded Reinke $1,000 for future medical expenses. The medical witness agreed that Reinke would have to submit to another surgical procedure to tighten the bolt in his left hip joint and that the cost of this procedure, including hospitalization and drugs, would be from $500 to $700. The doctor also testified that he would need additional medical attention and drugs, but there is no testimony as to the extent of the treatment and drugs and no testimony as to the cost.

In *La Fave v. Lemke* (1958), 3 Wis. (2d) 502, 509, 89 N. W. (2d) 312, this court stated that:

"Although there is evidence which would support findings that there will be pain in the future and treatment for it will be reasonably necessary there is no evidence concerning any cost of such treatment. The jury was told to take expense of treatment into consideration in reaching its award of damages, but its answer to that extent rests only on speculation. (See *Sawdey v. Schwenk* (1958), 2 Wis. (2d) 532, 537, 87 N. W. (2d) 500.)"

Woltjen concedes that the evidence supports an award for future medicals in the amount of $700 and no more. We must agree there is no proof to sustain an award in excess of $700.

The appellant Woltjen also objects to the award of $2,000 to Mary Ann Reinke for nursing services rendered to her husband upon two grounds: (1) A claim for nursing services belongs to the injured party, Leo Reinke, and not to the person who rendered the service, and (2) there is no proof of the extent nor the value of the services rendered.

As an academic proposition the claim against a tortfeasor for necessary and reasonable medical services, including nursing services, must be prosecuted by the injured party. It is his claim for the damages he has sustained, even though he may be liable to the person who rendered the service.

If a wife performs the nursing service, the husband can collect the customary and reasonable amount for the necessary service. Because of our comparative-negligence statute Reinke's right to recover, even if the claim were made by him is reduced by his percentage of causal negligence.

In this instance Woltjen did not object to the question in the verdict upon the ground it was not a claim of Mary Ann Reinke. We do not believe Woltjen should be able to sit by without objection to the form of the verdict and then deny liability because the award was to the wife rather than the husband, where both the husband and the wife were parties to the action.

However, we conclude Woltjen's second contention is sound and the award for nursing services must be set aside.

In *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 27, 28, 133 N. W. (2d) 235, we stated:

"On the record Mrs. Moritz did not sustain her burden of proof on this item of damages. There is absolutely no evidence of the customary charges for this kind of domestic work. Ann Bennett was not even called to testify, and Rose Kroll, who did testify, was never asked about the usual going rate for her services.

"Even assuming that the customary charge was proved, the evidence was still insufficient to show the amount of time actually put in by the two women. . . .

". . .

"While appellant clearly was entitled to some compensation for the household services she required as a result of the accident, the record demonstrates that the damages were not proved with any reasonable certainty. When damages are susceptible of precise proof or of estimation by someone having knowledge, the proof must be adduced in order to sustain the burden of showing the expenses. This appellant failed to do, and since the trial court is not permitted to determine the value of personal services, there was no error in disallowing the jury award."

Likewise in the case at hand, there is no proof as to the customary charges for nursing services in the locality nor is the evidence in any sense sufficient to show the extent of the services rendered.

We conclude that the award of $2,000 to Mary Ann Reinke cannot be sustained because of the failure of the proof to establish the extent and value of the services.

The awards made by the jury to Leo Reinke for future medical expenses must be disallowed to the extent of $300. The award to Mary Ann Reinke for nursing services must be totally disallowed.

Conceivably this case could be remanded to the trial court for a new trial on the two damage issues, future medicals, and nursing services, in the interests of justice, pursuant to sec. 251.09, Stats. We have, as we must, disallowed $2,300 from the verdict. If this were the only claim or a substantial portion of the claim we most probably would order a new trial in the interests of justice, but the fact of this case is that the $2,300 disallowed is such a proportionately small part of the verdict (it is in excess of $100,000) that we do not conclude that interests of justice require a new trial.

The judgment entered must be amended to provide that the recovery of Leo Reinke be reduced by $270,

and that recovery of Mary Ann Reinke be reduced by $2,000.

*By the Court.*—Judgment amended pursuant to the opinion and, as amended, affirmed. Appellant allowed to tax one third costs.