BURKE, Plaintiff and Respondent, v. POESCHL BROTHERS, INC., Defendant and Appellant: MAJOR GRADING CORPORATION, Defendant and Respondent.

*January 30—February 27, 1968.*

226

For the appellants there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes*.

For the respondent there was a brief by *Habush, Gillick, Habush & Davis*, and oral argument by *James J. Murphy*, all of Milwaukee.

BEILFUSS, J.   The issues on the appeal are:

1.   Was the defendant-appellant, Poeschl Brothers, Inc., causally negligent?

2.   Was the plaintiff-respondent, Frank A. Burke, contributorily negligent as a matter of law?

3.   Is the jury's award for past and future pain, suffering and disability excessive?

The defendant-contractor's duty to the plaintiff in the present case is prescribed by two legislative provisions:

(a)   Sec. 62.15 (11) of the Wisconsin Statutes:

"STREET OBSTRUCTION.   All contractors doing any work which shall in any manner obstruct the streets or sidewalks shall put up and maintain barriers and lights to prevent accidents, and be liable for all damages caused by failure so to do.   All contracts shall contain a provision covering this liability,[1] and also a provision making the contractor liable for all damages caused by the negligent digging up of streets, alleys or public grounds, or which may result from his carelessness in the prosecution of such work."

(b)   Sec. 29 of ch. 5 of the city of Milwaukee Ordinance:

"Any person installing, excavating, constructing, reconstructing, grading, filling, or doing any other repairing or improving in any public way or public place shall provide adequate barricade lights and such other protective devices as may be necessary to adequately warn the public of the condition of the area and prevent injury to any person or property."

The statute and the ordinance are safety measures. This court has firmly established the principle that the violation of a safety statute or ordinance constitutes negligence per se. *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 147 N. W. 2d 277; *Szafranski v. Radetsky* (1966), 31 Wis. 2d 119, 141 N. W. 2d 902; *Meihost v. Meihost* (1966), 29 Wis. 2d 537, 139 N. W. 2d 116.

---

[1] The contract between the city and Poeschl Brothers complied with this statute.

The appellant does not argue that the failure to erect barricades was not negligence but earnestly contends the lack of barricades was not a cause of the plaintiff's fall and injuries. The contention is that the purpose of barricades is to warn users of the fact that the sidewalk was being repaired and of the consequent danger; that the torn-up condition of the sidewalk and the presence of the excavation were readily seen and known to the plaintiff; and that failure to warn of the excavation was not a cause because he needed no warning; he could see and knew what the situation was. This argument would be plausible if it was only the excavation that caused the accident. The event that caused the plaintiff to fall was the breaking off of the remaining sidewalk block. The fact the remaining block was weakened to the extent that a part of it broke off was not a condition that was readily seen or known to the plaintiff, nor is it the type of danger that is or should be known to an ordinary prudent user of a sidewalk in the exercise of ordinary care. On the other hand, it is not a condition that is unknown or one that could not be anticipated by an experienced street repair contractor in the exercise of reasonable or ordinary care.

In this instance the sidewalk blocks or squares that were to be removed and replaced with new concrete were marked by a city inspector. The subcontractor, the defendant Major Grading Corporation (not a party in this appeal), removed the sidewalk blocks by means of a machine called a "Gradall." This machine has a fork-like arm that will go under the block and lift or break it out.

Mr. Joseph Poeschl, the president of the appellant corporation, had about fifteen years' experience in doing this kind of sidewalk repair. At the trial, on adverse examination, he testified in part as follows:

"*Q.* Is your answer then that the—the block of sidewalk next to the one being removed is sometimes damaged in removing the block? *A.* Oh, that happens once in a while, see why—

"*Q.* Thank you, Mr. — *A.* Can I explain? Can I explain that?

"*Q.* Sure, go ahead. *A.* See, there's two different sidewalks. The way we laying it now, we lay it all in one. Years ago they laid about three to four inches concrete down. There was hardly no cement. Then they put an inch across on their facing see, and as soon as you just touch that, that breaks off, see. That is not actually damage, it just—that falls apart even when you walk on it.

"*Q.* Even when you walk on it? *A.* Even when you walk on it. No machine—you can't get on with no machine."

We agree with the trial court wherein it is stated in the memorandum opinion on motions after verdict:

"The purpose of the statute and ordinance is to warn pedestrians that the condition of the area is dangerous. It warns against obvious dangers and against many which are not obvious to the layman, but which do exist as shown by experience in sidewalk and street construction. The hazards attendant in the removal of an old slab of concrete until the new sidewalk is poured are readily realized if one has some experience in these matters. The removal of an old slab or square of sidewalk by power equipment such as used by a Gradall as was used here may weaken or damage the adjoining pieces of sidewalk. Furthermore, the removal of the lateral support of the existing walk has the effect of lessening the strength of the old walk from any downward pressure. In either case the damage to the remaining sidewalk may not be apparent.

". . .

"The court is of the opinion that the hazards which actually operated here are within the purview of the statute and part of the reason barricades are required by law. Had a barricade been placed west of the area which was removed the plaintiff would have been warned not to proceed as he did. Under the circumstances the court cannot say the failure to place a barricade as required by the statute and ordinance was not a substantial cause contributing to the accident in question."

The appellant further contends that there was no duty to barricade or warn of the danger that might exist in the square of the sidewalk that was not removed because the city inspector had not directed that it be removed. We cannot give the statute and the ordinance that narrow construction. The whole area constituted potential danger to users of the sidewalk and the appellant knew the remaining blocks could be damaged and made a source of danger by the removal of adjacent blocks. If the contractor knew or should have known of potential danger arising in the sidewalk area because of the repair work he was undertaking it was his duty to barricade or otherwise warn the users of the sidewalk.

The defendant next contends that the plaintiff was contributorily negligent as a matter of law because he placed himself in the position of danger by attempting to cross the area under repair.

Certainly it is true that regardless of the use of barriers or other warnings plaintiff was required to use ordinary care for his own safety, and was required to take such care to avoid any hazards which were apparent to him. Plaintiff's knowledge of the existence of the excavation and his attempt to cross it, however, does not as a matter of law preclude recovery if he did not realize or appreciate the danger and if it was not reasonable to expect that he would realize and appreciate the danger. The rule is stated in 63 C. J. S., *Municipal Corporations,* pp. 200, 201; sec. 850 b:

"A traveler is not precluded from recovery because he knew of the defect or obstruction, where his knowledge was remote, or imperfect, or insufficient to give a full appreciation of the danger, as where he knew of the generally defective condition of the way, but had no knowledge of the particular defect which caused the injury. In other words, knowledge of the defect or obstruction, without adequate knowledge of the danger in using the way, is insufficient to charge the traveler with contributory negligence. . . ."

This court has long recognized this proposition in regard to defects in highways. Several of the cases exemplifying this are summarized in *Keller v. Port Washington* (1929), 200 Wis. 87, 91, 92, 227 N. W. 284:

"There are several other cases where plaintiff was driving upon a highway known to him to contain defects in which his negligence was held to be a jury question which should be considered in determining whether the plaintiff here was negligent as a matter of law. In *Luedke v. Mukwa*, 90 Wis. 57, 62 N. W. 931, it was held not negligence as a matter of law for one knowing of the generally defective condition of a corduroy road to drive upon it when covered with water where the water concealed the depth of a hole into which his wagon dropped. In *Jenewein v. Irving*, 122 Wis. 228, 99 N. W. 346, 903, a woman on a country road was driving across a culvert after a freshet when water was running over the road and concealed the culvert's end and the rig tipped over into a deep hole at the end of it and the woman drowned. It was held that she was not guilty of negligence as a matter of law in view of the facts that the fence lines at the sides of the road marked the road limits, that she entered the water midway between the fences with taut lines and had seen others drive through immediately before she started to cross. In *Schmidt v. Franklin*, 164 Wis. 128, 159 N. W. 724, the court held that plaintiff's negligence was a jury question where she was riding at dusk on a highway and sustained injury through the rig dropping into a hole the depth of which was concealed by water, although the highway, to the driver's knowledge, was generally defective because of a series of mud holes.

"In all these cases holding that plaintiff's negligence was a jury question the extent or precise location of the defect causing the injury was not apparent from observation by the driver. And there are other cases in which the driver's negligence was a jury question where he knew of a generally defective condition but could not observe the precise extent of the defect causing the injury."

The same reasoning applies with equal persuasiveness in the case at bar. Merely because the plaintiff attempted

to cross the excavation does not render him contributorily negligent as a matter of law and, consequently, the question was properly left to the jury.

The evidence is sufficient to support the jury's findings.

"The rule is that when a jury's findings are attacked, particularly when they have had the trial court's approval, as in the instant case, our inquiry is limited to the issue whether there is any credible evidence that under any reasonable view supports such findings." *Heritage Mut. Ins. Co. v. Sheboygan County* (1962), 18 Wis. 2d 166, 170, 118 N. W. 2d 118.

There was testimony that the excavation looked safe to cross. It was only about four to six inches deep and the surface of the bottom was level and based with sand and gravel. According to the plaintiff's testimony, there was no way to circumvent the excavation other than to go a long distance out of the way. The retaining wall on the plaintiff's left prevented him from passing with his cart and the state of reconstruction of the curb and gutter on his right prevented him from attempting to cross the terrace and go around the excavation via the street. It may have been safer for the plaintiff to retrace his steps and go back the way he came. However, faced with the apparently safe excavation and the only alternative being to go a long distance out of the way, the jury could find that the plaintiff acted as any reasonably prudent person would if faced with the same circumstances.

Is the jury's award for past and future pain and suffering and disability supported by the credible evidence? Appellant contends the jury award of $15,000 for personal injuries to the plaintiff is excessive. This amount included $7,500 for past pain and suffering and disability, and $7,500 for future pain and suffering and disability.

In *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911, this court reiterated its prior direction that the trial court should point out the evidence upon which it approves or rejects the jury's damage award. Where the analysis by the trial court is complete, this court need not "review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive." *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235.

Several pages of the trial court's memorandum opinion in the instant case were devoted to analysis of the evidence concerning the plaintiff's past and future pain, suffering and disability. Upon review of the record we find that the trial court's analysis is comprehensive and accurate.

Several paragraphs of the memorandum opinion are quoted to demonstrate that the awards to the plaintiff are not excessive and, further, as an example of a trial court's analysis. We do not mean that in every case the evidence must be set forth as completely as was done here but it is an excellent example of a comprehensive review that supports the trial court's conclusions.

"The accident occurred on April 23, 1962 at approximately 11 o'clock in the morning. The plaintiff completed his route at about 12:30 p. m. and returned to his station. Within a half an hour after the accident he experienced pain and tightness in his knee which 'didn't work right.' He testified that at 1 o'clock he experienced terrific pain which was great enough to bring tears to his eyes. The next day he reported to work, but his knee was very painful. He was sent to an employees' nurse at the Federal Building who referred him to Dr. Coles. Dr. Coles examined him and prescribed heat. The only work he did that day was to set up his route.

"On April 30 his knee was swollen and aspiration of the fluid was performed. Plaintiff worked on May 1, but his knee became swollen again. He returned to Dr. Coles on May 2. At that time fluid was again present in

the right knee and there was marked tenderness. Between May 1 and May 25 the plaintiff saw Dr. Coles several times a week and received physical therapy. He was advised to stay off from work and during that period was off some ten days.

"On May 23 he entered the hospital and an arthrotomy of the right knee was performed in which the entire medial meniscus was removed. This is an inner cartilage, and it was found to be crushed. He was discharged from the hospital on May 30 and returned to work on July 5, 1962. During his convalescence he used crutches, wore an elastic bandage and performed quadriceps exercises.

"Dr. Coles testified that the plaintiff made a good recovery, some fluid and crepitus persisted for a while, and by December 5, 1962, the plaintiff was walking without difficulty. The plaintiff testified that during the warm months of the year his knee felt better, but when it got cold and he wore heavy boots his knee began to pain him. He testified to substantial discomfort during the winter of 1962 and in February, 1963 he again saw Dr. Coles because his knee became swollen. Dr. Coles found some tenderness over the lateral aspect of the right knee.

"In the summer months it was all right, but late in fall and winter he again experienced trouble and pain. In January of 1964 he again returned to Dr. Coles. He complained of increased pain over the lateral aspect especially with prolonged walking and standing and that his right knee 'gave out' at times. Examination of the knee revealed tenderness over the joint line and increased fluid, but that motions were performed well.

"He saw the doctor on February 10, 17, 20, and 28, March 6, 23, 30, and April 6 and April 13. During all of this time, the plaintiff complained of continued aching and discomfort to the lateral aspect of the knee. He lost some time from work.

"On April 15, 1964 the patient was admitted to the Mount Sinai Hospital at which time an arthrotomy was performed during which a torn lateral semi lunar cartilage was removed. This cartilage is on the lateral aspect of the knee. He again went through a period of similar convalescence and made a good recovery. He returned to work on June 19, 1964.

"The plaintiff still complains of trouble particularly in the winter, experiences a grinding feeling when walking

and sometimes suffers 'a jolt.' This he contends occurs every other work day. The difficulty is most severe in winter. On at least one occasion in March of 1965 he has gone back to see Dr. Coles in reference to his knee. He testified that his activities playing with his children have been substantially curtailed because of his injury as has his participation in ice skating, dancing, bike riding, hunting and fishing.

"Dr. Coles testified that the injury to both cartilages were causally related to the accident and the injury was permanent. He conceded that the removal of a cartilage was common among athletes, but said such was usually the medial meniscus. He stated while the removal of the medial meniscus was common it was exceedingly unusual to remove a cartilage in the lateral aspect. Although he conceded there was some opinion that the cartilage had no function, he placed little credence in such opinion. He testified that the knee was not as good as originally, that there would be instability, aching in damp or cold weather and crunching.

"The injury occurred on April 23, 1962 and the trial was concluded on March 16, 1967, so that approximately the issue as to past pain, suffering, and disability involved a period of approximately five years. At the time of trial the average longevity as given to the jury for a man of the plaintiff's age was 27.4 years.

" . . .

"There is no basis for the court to find that the award of damages was based on passion, prejudice, error or is excessive.

"While the damages for the past pain, suffering, and disability might be somewhat high the court cannot say that they are beyond a reasonable range which the jury could award.

"It must be remembered that the man earns his living by walking so that there is the constant threat of overtaxing the knee with consequent pain. While it is true that a patient experiences no pain during surgery, post operative pain, discomfort, disability, and anxiety is present. The testimony indicates that the pain ceased to be of a chronic nature only in the warm summer months.

"In reference to the future damages, the award amounts to an annual amount of $270 to $280 a year. There was uncontested evidence that in addition to the

pain which the plaintiff has experienced in the past he has also experienced difficulty in the functioning of his knee. The medical testimony relating that the pain and disability are permanent and will continue in the future is uncontradicted. Dr. Coles' opinion as to permanency was based on multiple factors, including occasional pain in the right knee, continued joint effusion, thinning or atrophy of the right thigh, and the development of chondromalacia of the right patella manifested by patella femoral crepitus on knee motion and pain on passive manipulation of the right knee. In reference to the disability aspect of the award the court was careful to admonish the jury that nothing was to be included for wage loss or future loss of earning capacity."

Based on this evidence and the trial court's review and correct application of the law, this court must affirm the jury's award.

"The standard of this court's review is that where there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed." *Bach v. Liberty Mut. Fire Ins. Co., supra,* page 82; *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. 2d 552, 561, 137 N. W. 2d 457; *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 120 N. W. 2d 692; *Erdmann v. Milwaukee Automobile Mut. Ins. Co.* (1963), 20 Wis. 2d 439, 122 N. W. 2d 430.

"This court views the evidence on damages in the light most favorable to the plaintiff. [Cases cited.] Courts are reluctant to interfere with jury determinations of damages. [Cases cited.]" *Burlison v. Janssen* (1966), 30 Wis. 2d 495, 506, 141 N. W. 2d 274.

The award was not beyond reasonable limits and was based on credible evidence.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J., dissents.