NEIDER, Appellant, v. SPOEHR and others, Respondents.

*No. 247. Argued June 4, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 587.)

554

For the appellant there was a brief by *Lee, Lee & Johnson,* attorneys, and *Melli, Smith, Shiels & McCrory* of counsel, all of Madison, and oral argument by *Robert W. Smith.*

For the respondents there was a brief by *William L. McCusker of Madison,* for Clarence Spoehr and Milwaukee Mutual Insurance Company, and by *Hart, Kraege, Wightman, Bieber & Thurow* of Madison, for William Neider and Northwestern National Insurance Company, and oral argument by *Mr. McCusker.*

BEILFUSS, J.   The issues are as follows:

1. Was the evidence insufficient to support an award for future loss of earning capacity?

2. Was the jury award of $20,000 for future pain, suffering and disability excessive?

3. Did the trial court abuse its discretion in setting the amount of the award pursuant to the *Powers* rule [1] at $15,000?

In *Reinke v. Woltjen* (1966), 32 Wis. 2d 653, 660, 146 N. W. 2d 493, we reviewed the authorities on the subject of compensation for impairment of earning capacity and concluded the following:

"In determining damages to be awarded for impairment of earning capacity or loss of future earnings, in most instances, the finder of the fact must deal in some probabilities. In the case where the claimant is totally permanently disabled from engaging in any gainful employment or activities his impairment of earning capacity can be calculated with a substantial degree of certainty. Most claimants do not face that drastic future but still may have suffered a loss of earning capacity. Many elements that go to a determination of impairment capacity cannot be proven with certainty. Proof of these elements must be permitted by facts or inferences that

---

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

lead to reasonable probabilities. Some (but not all) of the elements which cannot always be shown with certainty are the length of time a disability will exist, the degree of improvement or additional disability that will ensue, the aptitude and ability of a disabled person to engage in other types of work, and the compensation he will be able to obtain. As to these and other uncertain elements the trier of fact must be allowed to consider the reasonably apparent probabilities as they appear from the evidence, together with such known facts as his age, his education and training, the type work he was doing before the injury, and the compensation he was receiving, and then in its judgment determine what amount fairly and reasonably represents his loss of earning capacity, reduced to its present value."

The trial court in the instant case was correct in denying the plaintiff recovery for impairment of earning capacity.

Mrs. Neider's formal education ended in the seventh grade. She worked from time to time as a waitress, domestic, and baby-sitter. For some time prior to the accident she worked as a wrinkle ironer in a shoe factory in Waterloo, Wisconsin. This job consisted of ironing wrinkles out of shoes. She had been laid off this job but when she was working she worked eight hours per day, five days a week at the rate of $1.35 per hour.

About six months after the accident, on October 6, 1964, Mrs. Neider returned to her same job at the shoe factory. She continued at her job as a wrinkle ironer until September, 1966, when she was transferred to a job of dipping shoes into a solution and then passing the shoes on to the next operator. Her compensation as a wrinkle ironer was calculated on a quota basis. Her hourly rate of pay for an eight-hour day was dependent upon how many cases of shoes she handled. There were 24 pairs of shoes in a case. If she processed 40 cases per day her hourly rate of compensation was $1.40, 45 cases $1.45, and 50 cases $1.50. After her

return to work she was able to increase her hourly wage from $1.35 per hour to $1.50 per hour.

Her workshop foreman, Mr. Justman, testified that he was able to observe Mrs. Neider every day at work. He stated that she was probably a little sharper before the accident—that she missed a few more wrinkles but not to the extent it was a problem. It is apparent, however, that her overall production was increased. Mrs. Neider did not complain of her disabilities at work nor, from his observations, was Justman aware of any disabilities that affected her work.

Mrs. Neider testified she thought her job was changed because she could not see the wrinkles as well. Justman testified that she was assigned to a different job because of overall plant production changes necessitated by virtue of the fact the company changed from making ordinary shoes to army shoes and that men were assigned to wrinkle removing process rather than women.

At the time of trial in 1967, Mrs. Neider was still working and receiving $1.50 per hour.

There was no medical testimony adduced at trial which relates the residuals of Mrs. Neider's injuries to her ability to continue to perform the work she had performed before the accident. This court has approved the rule that where the evidence establishes the plaintiff has suffered a "permanent injury," this is usually sufficient to permit the jury to infer there has been a compensable impairment of earning capacity. *Reinke v. Woltjen, supra.* However, where there is affirmative evidence that there has been no impairment of earning capacity, without any evidence to the contrary, medical or otherwise, the jury should not return an award for this item. There are cases where the injury and disability so obviously impair the earning capacity of an individual that no medical evidence is needed to support an award. This is not such a case.

Mrs. Neider's injuries may well mean that she will never become a surgical nurse, secretary, or any of a number of things (a conclusion which is speculation absent any medical testimony). However, the probabilities of a woman fifty-three years old with only a seventh grade education going to greater plateaus are not too great, with or without the injuries received by Mrs. Neider. Mrs. Neider testified she could not bowl, sew or watch television as well after the accident as she could before. Under the facts of this case these disabilities do not go to a loss of future earning capacity but to loss of recreational enjoyment. These items of probable loss, under the verdict submitted, are included in the award for "future pain, suffering and disability." Under the rules set forth in *Reinke, supra,* the trial court in the instant case was justified in setting aside the award.

The plaintiff cites *Helleckson v. Loiselle* (1967), 37 Wis. 2d 423, 155 N. W. 2d 45; *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911; *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65; *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235, for the proposition that this court may review the entire record *ab initio* where the trial court finds the verdict excessive without explaining its action or giving its reason for so doing. Plaintiff contends the trial court's opinion in the instant case does not adequately explain its action or give its reason for stating the verdict was excessive.

In *Bach v. Liberty Mut. Fire Ins. Co., supra,* the memorandum of the trial court did not detail any of the evidence but merely stated the award was " 'not out of reason' " albeit it was at the " 'upper limits of damages.' " *Bach, supra,* at page 83. In *Helleckson v. Loiselle, supra,* page 427, the court found the trial court's statement "somewhat more complete than the memorandum in *Bach,*

*supra,*" but it was "not sufficient to constitute the 'analysis' of the damage evidence we contemplated in that opinion."

Shortly after the *Helleckson Case, supra,* this court decided *Burke v. Poeschl Brothers, Inc.* (1968), 38 Wis. 2d 225, 156 N. W. 2d 378, wherein this court again reiterated that the trial judge should review the evidence upon which he bases his approval or rejection of the damage verdict as excessive or inadequate. In *Burke* the court quoted several paragraphs of the trial court's opinion which reviewed the damage evidence in especial and meticulous detail. This court stated, at page 236:

"Several pages of the trial court's memorandum opinion in the instant case were devoted to analysis of the evidence concerning the plaintiff's past and future pain, suffering and disability. Upon review of the record we find that the trial court's analysis is comprehensive and accurate."

The trial court in its opinion in this case first details the injuries the plaintiff received and the results of these injuries as they remained at the time of trial. It then reviewed the evidence concerning the future problems Mrs. Neider can expect from the injuries:

". . . The permanent residuals consist of numbness of the left cheek due to the injury to the left infra-orbital nerve, a deviated septum, irregularity in the clavical bone, double vision and dilation of the left eye. . . . While it was the opinion of one of her medical experts that the use of prism glasses, as prescribed, would reduce the problem of double vision, and that in all probability it would disappear within a period of two or three years from the time of trial, nevertheless, at the time of trial she continued to complain of double vision which she claimed affected her ability to read, as well as to sew, and minimized substantially her pleasure with respect to the use of her television. She has, however, made a remarkable recovery, considering the seriousness of her injury. . . .

"As to the award of the jury of $20,000.00 for future pain, suffering and disability, this court has indicated

that this amount is excessive. The plaintiff has and will continue to have some problem with her left eye. She does have a deviated septum which will necessitate surgery. Furthermore, she has a numbness in her cheek and up to the time of trial she had suffered continued pains in her face. Her vision has been substantially impaired so that prism lenses are required to correct her vision. Taking all of the factors of her injury into consideration as appears from the record in this case, it is the considered opinion of this court that the reasonable amount for her future pain and suffering is in the sum of $15,000.00. . . ."

This, we believe, is a sufficient review of the evidence by the trial court and does meet the type of analysis of the damage evidence contemplated by the decisions of this court. The plaintiff urges the trial court excluded from its consideration the evidence of the damage to the retina of the plaintiff's left eye, and the fracture of the upper portion of her left tibia. Exclusion from specific mention does not mean the trial court excluded these items from consideration. The trial court does state that it has considered all the factors of the plaintiff's injuries. This, coupled with the review of the major injuries received, is sufficient under the facts of this case. As mentioned in *Burke v. Poeschl Brothers, Inc., supra,* this court does not contemplate that in every case the evidence must be specifically set forth in detail.

When the trial court reviews the excessiveness or the inadequacy of the damage award, the rules which govern the trial court's review of the verdict in a case such as this are as follows:

"In considering whether the jury's appraisal of damages for pain, suffering, and disability is excessive, we must of course view the evidence in the light most favorable to plaintiff." *Kincannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 233, 92 N. W. 2d 884.

" 'Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for unliquidated damages will not be set aside merely because

it is large or because the reviewing court would have awarded less. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience.'

". . . A jury may mistakenly assume (without supporting evidence) that there have been, or will be certain effects from an injury or fix compensation for sufficiently proved effects of injury at a figure which is beyond the range of reasonably debatable amounts. In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict." *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 42, 43, 103 N. W. 2d 907.

The foregoing rules are guidelines for a court reviewing a jury's award on the record as a matter of first impression. Since the trial court's memorandum opinion in the instant case was sufficient, this court is not obligated to review the entire record *ab initio*.

"We do, however, have a different task, and must approach it from a different point of view because of the fact that the trial judge determined that the awards were excessive. The trial judge has an advantage over the appellate court in that he not only sees and hears the testimony, which we can only read from the transcript, but he also has the same opportunity to observe the injured person as does the jury. In this case, for instance, he has seen the scars, and has his own opinion as to how serious their effect can reasonably be expected to be in the future lives of the infant plaintiffs. Because of the advantage of personal observation enjoyed by the trial judge, the rule has been evolved that where a trial court determines that damages are excessive, and orders a new trial for that reason, his order will be reversed and directions given by this court to enter judgment on the

verdict only if we find an abuse of discretion on the part of the trial court. *Boughton v. State Farm Mut. Automobile Ins. Co., supra; Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 350, 99 N. W. (2d) 163." *Makowski v. Ehlenbach, supra,* pp. 43, 44.

"In *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911, this court reiterated its prior direction that the trial court should point out the evidence upon which it approves or rejects the jury's damage award. Where the analysis by the trial court is complete, this court need not 'review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive.' *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235." *Burke v. Poeschl Brothers, Inc., supra,* page 236.

Where the trial court has reviewed the evidence, set aside the verdict, and ordered an option under the *Powers* formula, the rule for review in this court is as follows:

"Where a trial judge has reviewed all of the evidence and has found a jury verdict awarding damages to be excessive and has fixed a reduced amount therefor, and has determined that there should be a new trial on damages unless the plaintiff takes his option for a judgment on the reduced amount, this court will reverse his directions 'only if we find an abuse of discretion on the part of the trial court.' *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 44, 103 N. W. (2d) 907; *Boughton v. State Farm Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 618, 97 N. W. (2d) 401; *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163." *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 571, 117 N. W. 2d 660.

The future problems Mrs. Neider faces as a result of the injuries she received are far less than would be expected from the nature of the injuries she received. Dr. Jack D. Heiden testified that to a reasonable medical certainty Mrs. Neider would continue to suffer pain and discomfort in the area of the left tibia for one or two years. It is significant that Mrs. Neider made no com-

plaints about leg pain and received no medical treatment for a period of about two years before trial. Dr. Heiden testified the fracture healed well, the leg had all its normal functions and there was no atrophy of the muscles. Apparently Mrs. Neider's leg becomes painful when she stands for a long time, when she kneels or scrubs floors, when the weather is damp, and when she is walking on stairs.

As to the right clavical, Dr. Heiden testified that it had healed with a slight deformity visible cosmetologically, but leaving no residual pain, discomfort or disability.

Dr. Rodney Sturm testified concerning the left eye injuries. Due to the damaged iris, this eye will remain dilated permanently. Mrs. Neider does not complain of light sensitivity. Cosmetologically, the effect is that the left pupil does not match the right in size. The injury to the retina or macula of the left eye has impaired Mrs. Neider's vision to the extent that it is no longer correctable to 20/20 but is only correctable to 20/30. Mrs. Neider does have the problem of double vision which appears to be the most serious result of her eye injuries. An operation and the use of prism lenses have relieved some of this problem, but she still experiences the double image in six of the nine quadrants of sight. There is nothing further that can be done to repair this condition and it will be a permanent condition. Dr. Sturm testified that the only way the plaintiff can rid herself of the double vision, other than to patch her left eye, would be to suppress entirely the image created by the left eye. This is possible by the brain compensating or learning to ignore one of the images created by one of the eyes. In the event this could not be accomplished by Mrs. Neider, the effective use of her left eye would be limited to peripheral vision. It was speculated that this suppression process may take two or three years, and that it is possible that it could not be accomplished by Mrs. Neider

at all. Mrs. Neider testified that the double vision impaired her ability to watch television as long as she used to, bowl, read small print, crochet and knit. Also, she testified she has difficulty picking things up and reaching for things. She gets "dizzy" when she puts her head up and her head "swims" when she bends down. She has difficulty seeing things to her left and must turn her head until her right eye finds the object.

At the time of trial Mrs. Neider's nose was bent to the right which interfered somewhat with her breathing. It also detracted from her appearance. It is clear that this condition can be corrected by surgery.

Mrs. Neider also has a loss of feeling or sensation in the left cheekbone area due to nerve damage. This condition is apparently permanent.

On the record it cannot be said the trial court abused its judicial discretion in determining the award by the jury was excessive.

Concerning the reasonableness of the sum set by the court under the *Powers* rule, the following is apropos:

"Where this court finds no abuse of discretion in a trial court's determining that the damages awarded by a jury are excessive, it is only in an unusual case that we will disturb the amount which the trial court has fixed as reasonable for the purpose of granting the plaintiff an option to accept judgment in that amount in lieu of a new trial on damages. It cannot be held that a certain amount alone represents reasonable damages for a particular injury, or injuries, and that anything below or above that is unreasonable. In other words, reasonable damages fall anywhere between an unreasonable low and an unreasonable high.

"In determining whether a trial court has abused its discretion, in fixing a certain sum as a reasonable amount of damages for the purpose of devising an option to comply with the rule of the *Powers Case*, we apply the test of whether, if the trial court had been sitting as sole trier of the facts and had fixed damages in such amount, we would disturb such finding." *Boodry v. Byrne* (1964), 22 Wis. 2d 585, 595, 596, 126 N. W. 2d 503.

And, from *Lewandowski v. Preferred Risk Mut. Ins. Co.* (1966), 33 Wis. 2d 69, 78, 146 N. W. 2d 505:

"In applying the *Powers* rule, the court must set the amount of damages at a figure which it considers to be the most reasonable in view of the evidence, and since reasonable men may differ, the trial court's determination will be upheld if it falls within a range of reasonableness."

Applying the foregoing rules to the facts of the case and the opinion of the trial court, we find no abuse of judicial discretion by the trial court as to its conclusions on excessiveness of the jury finding nor the reasonableness of the amount fixed for the plaintiff's option.

*By the Court.*—Order affirmed. The plaintiff, Edna Neider, to have twenty days after remittitur to exercise the option provided by the trial court.