# August Term, 1968.

WELLS, Plaintiff and Appellant, v. NATIONAL INDEMNITY
COMPANY and another, Defendants and Third Party
Plaintiffs and Respondents: BAUER and another,
Third Party Defendants and Appellants.

*No. 142. Argued October 28, 1968.—Decided December 3, 1968.*
(Also reported in 162 N. W. 2d 562.)

2

4

For the plaintiff-appellant there was a brief by *J. Richard Long* and *Blakely, Long, Grutzner & Jaeckle,* all of Beloit, and oral argument by *J. Richard Long.*

For the third party defendants-appellants there was a brief by *Berg & Gage* of Janesville, and oral argument by *Louis D. Gage.*

For the defendants and third party plaintiffs-respondents there was a brief by *Hansen, Eggers, Berres &*

*Kelley,* and by *Frank X. Kinast,* all of Beloit, and oral argument by *Mr. Larry J. Eggers* and *Mr. Kinast.*

HALLOWS, C. J. Two questions are raised on this appeal: (1) Does a defendant who has impleaded a third-party defendant for contribution have a right to make a rebuttal argument after the plaintiff has made his rebuttal; and (2) did the court err in finding the damage award excessive on the ground there was no evidence of loss of earning capacity.

The facts of the accident are not complicated or crucial to the points raised. There were two theories of how the accident occurred. According to the plaintiff and the host-driver Mrs. Bauer, they were proceeding west on Middle avenue in the city of Beloit and had stopped at Sixth street, an arterial which crossed Middle avenue. It had snowed the night before and the roads were quite slippery at 8 o'clock in the morning when the accident happened. Mrs. Bauer intended to turn to the left or to the south on Sixth street. Before doing so, both women noticed a jeep stopped opposite them across Sixth street with its directional signal indicating a right or southerly turn onto Sixth street. At the same time, both women noticed the bus coming south on Sixth street about one block north of the intersection. The driver of the jeep waved Mrs. Bauer to proceed, which she did. After she turned south on Sixth street and traveled a short distance, her motor stalled and the car came to a stop along the west curb on Sixth street, a short distance from the intersection. While Mrs. Bauer was attempting to start the motor, the bus crashed into the rear end of the auto and injured the plaintiff. Two witnesses sustained this version of the accident.

According to the bus line's version, the bus driver saw the Bauer car when its front end was at the center line of Sixth street and when the bus was about 20 feet

north of the intersection. At that time the bus was going 10 to 15 miles an hour. The Bauer car had moved slowly into the intersection and then stopped and the bus struck it while in the intersection.

*Right to Rebuttal.*

Automobile accident cases which involve multi-issues between a plaintiff and defendants and between the defendants themselves raise the first problem which is presented in this case. Normally, a party having the affirmative of an issue is entitled to open and close the arguments. This is so provided in sec. 270.205, Stats., which reads, "The party having the affirmative shall be entitled to the opening and closing argument, and in the opening the points relied on shall be stated." Obviously in multi-issue suits, in which all issues are not between the same parties, the affirmative of the issues do not rest on the same party and all of the parties having an affirmative burden cannot be the last to close. In this case the plaintiff had the burden of proving its case for negligence, breach, causation, and damages against the bus line. If the plaintiff had also sued the host driver, she would have had the same burden against the host driver. However, the plaintiff sought recovery only against the bus line which was required, if it sought contribution, to implead the host driver as a third-party defendant. On the contribution issue, the bus line had the affirmative against the impleaded host driver.

On motions after verdict, the trial court thought the bus line was entitled to rebut the arguments of the third-party defendant after the plaintiff's rebuttal and this issue was of no concern to the plaintiff. However, a closing argument of the bus line, unless it admitted liability, could place all the negligence on the third-party defendant and such an argument would be prejudicial to the plaintiff who had sued only the bus line and would

therefore violate his right to rebut last on his basic issue of the liability of the bus line.

We think this problem can best be solved by construing sec. 270.205, Stats., as applying only to the main or basic issue of the case as of right and not to issues between defendants. As to the latter, the purpose of the section may be applied in the discretion of the court in such a manner that the plaintiff is not prejudiced. Here, the trial court in its discretion might have allowed the bus line to rebut prior to the plaintiff's rebuttal. However, such a request was not made and that question is not before us.

Under the majority rule, which is followed by Wisconsin, a denial of the right to open and close is not necessarily prejudicial error. *Carmody v. Kolocheski* (1923), 181 Wis. 394, 194 N. W. 584; *Marshall v. American Express Co.* (1858), 7 Wis. 1, 73 Am. Dec. 381; *see also* 53 Am. Jur., *Trial,* p. 73, sec. 72. Here, the trial court thought the bus line was in fact prejudiced. This in a sense may be true but the bus line having no right to argue after the plaintiff had made its rebuttal makes the prejudice unactionable. We think it was error to grant a new trial on the issue of negligence and the order must be reversed and the case sent back to allow the trial court to pass on the remaining grounds for a new trial raised on the motions after verdict.

Since the trial court found the plaintiff was not contributorily negligent as a matter of law, we see no reason why this should be disturbed or relitigated. *See Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557, and *Zurn v. Whatley* (1933), 213 Wis. 365, 251 N. W. 435.

### *Excessive Damages.*

The trial court in finding the damage award of $17,000 was excessive, changed the answer in the verdict to $11,000 and ordered judgment in favor of the plaintiff

Betty Wells against the bus line unless she elected to have a new trial on the issue of damages. It is difficult to see how this could be done when the court had also granted a new trial on the issue of liability unless the new trial was to apply only between the defendants on the issue of contribution. However, on oral arguments, none of the attorneys took this view of the order and the order expressly provided the plaintiff had an option to accept judgment for $11,000 should she again prevail upon a retrial of the issue of negligence. In effect, her acceptance of the lower amount was conditioned upon her success on the retrial and gave her the option to retry damages too.

The order granting the option, however, did not follow the recommended procedure nor the language of the trial court's opinion. In *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 578, 117 N. W. 2d 660, this court detailed the procedure to be followed when a trial court considers the award of a verdict to be excessive under *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393. This procedure provided for a formal order setting aside the verdict (not changing answers) and granting a new trial on the damage issue, but both on the condition the plaintiff at his option might in lieu thereof have a judgment entered on the verdict for the lower amount determined by the court if he so notified the court within a specified time that he will remit the excess of the verdict.

In *Moldenhauer v. Faschingbauer* (1967), 33 Wis. 2d 617, 148 N. W. 2d 112, we explained this procedure as being, in essence, one to effectuate either an additur or a remittitur of the jury's award. The new trial is granted to one party and the option to avoid it to the other. In either case it was considered that the verdict should stand as rendered by the jury and reduced by the consent of the plaintiff or added to by the consent of the defendant to avoid the new trial. To accomplish this within the legal framework of a verdict, the setting

aside of the verdict must be conditional because the verdict may be required as a basis for an additur or a remittitur and the resulting judgment. The procedure in the present case raises problems of appealability of orders and other questions which this court attempted to avoid by the procedure laid down in *Lucas*.

Another difficulty appears in the option. The trial court reduced the jury award to an amount which it stated was "the highest sum an unprejudiced jury would award on the evidence." That is not the test. The *Powers* rule, which is exclusive in this area, requires the trial court to determine the damages in an amount it, as the trier of the fact, finds is fair and reasonable on the evidence. This amount may or may not coincide with what the court thinks might be the highest sum which an unprejudiced jury would or could find. *Boodry v. Byrne* (1964), 22 Wis. 2d 585, 126 N. W. 2d 503; *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587.

The trial court was correct on motions after verdict in deciding there was no proof of loss of earning capacity and therefore the amount of damages was excessive. The court considered the jury's award included compensation for loss of earning capacity because the item was in the verdict and the jury had been instructed upon it. At the time of the accident, Mrs. Wells was thirty-nine years of age, was working in the supermarket as a meat scaler, earning $1.35 an hour. The job as a meat scaler required considerable physical effort because she carried trays of meat weighing from 30 to 50 pounds. In the accident she received what is commonly referred to as a "whiplash" injury. At the time of trial, Mrs. Wells was forty-one years of age, still working at the same supermarket but at less vigorous work as a combination meat wrapper and meat scaler earning $2.30 per hour. One doctor testified she had suffered a permanent 14 percent loss of total body function as to the body as a whole. Another doctor testified the loss was 15 percent.

The plaintiff contends the jury could properly draw an inference of a compensable impairment of earning capacity because of the permanency of the plaintiff's injury. There is no question there was sufficient evidence for a jury to find Mrs. Wells had sustained permanent injury. But a permanent injury in and of itself does not necessarily prove or indicate a loss of earning capacity or serve as a factual basis for an inference in every case. In *Reinke v. Woltjen* (1966), 32 Wis. 2d 653, 146 N. W. 2d 493, this court stated that evidence of a permanent injury was usually sufficient to infer a loss of earning capacity. This is true in cases where the nature of the injury by common knowledge disables the plaintiff from performing the only type of work he is fitted to do. For instance, the loss of a finger would not necessarily impair a lawyer's earning capacity but it might well be the end of a surgical career for a surgeon. While the rule was approved in *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587, this court pointed out that when there was evidence of a permanent injury and also affirmative evidence that there was no impairment of earning capacity, the jury could not infer from the permanency of the injury that there was a loss of earning capacity in the absence of some evidence, additional to permanency of injury, to support such loss and to contradict the affirmative evidence that the permanent injury was not of such a nature as to impair the plaintiff's earning capacity. *See also* Ghiardi, *Personal Injury Damages In Wisconsin* (1964), p. 132, sec. 8:03.

In the present case there is no evidence of a loss of earning capacity, other than the permanency of the injury. The nature of the plaintiff's injury was not proved to limit the plaintiff's ability to work or to earn her livelihood. There is no proof of impairment of any skills or special abilities or aptitude or ability to engage in other types of work. There is some evidence of no loss of present earning capacity, however. Consequently,

we think the trial court was correct in finding the damages excessive and necessarily reflected an allowance for loss of earning capacity which was not sufficiently proved. Since this case must go back for a redetermination, it is not necessary for us to comment on the amount of the excess. The *Powers* rule should not be applied if the plaintiff is required to retry the issue of liability with the defendant but rather the issue of damages should also be retried.

*By the Court.*—Order reversed, and the cause remanded for further proceedings not inconsistent with this opinion.